[Civ. No. 48810. Second Dist., Div. One. Dec. 28, 1976.]

ANNE T. HENDERSON et al., Plaintiffs and Appellants, v.
MANN THEATRES CORPORATION OF
CALIFORNIA, Defendant and Respondent.

398

**COUNSEL**

Charles L. Crouch, Jr., and David J. Prager for Plaintiffs and Appellants.

O'Melveny & Myers, Philip F. Westbrook and Bennett W. Priest for Defendant and Respondents.

**OPINION**

**WOOD, P. J.**—In 1929 the owners of vacant land on Hollywood Boulevard leased the property for a term of 99 years. Plaintiffs are successors in interest to the lessors; and defendant is the successor in interest to the lessee. Plaintiffs seek a declaration that a provision in the lease that the rent be paid in gold coin of the United States of America is valid. The trial court concluded that the provision for payment of the rent in gold coin is prohibited by the "Joint Resolution of 1933" enacted by Congress (31 U.S.C. § 463); that the joint resolution was not repealed, expressly or impliedly, by the 1973 amendment of the Par Value Modification Act (Pub. Law No. 93-110. Cong., H.R. No. 6912), and that defendant is not obligated to pay the rent in gold coin.

Plaintiffs (lessors) appeal from the judgment. They assert that said joint resolution was repealed by said 1973 act, effective December 31, 1974, and the repeal revived the gold clause in the lease, effective on that date. They assert further if the 1973 act did not repeal the resolution, the

resolution violates due process of law. Appellant also makes other contentions, which relate to the contractual doctrines of "Impossibility" and "Illegality."

The case was submitted to the trial court on an agreed statement of facts. There is no controversy as to the facts. Appellants assert that the findings of fact and conclusions of law provide no basis for the judgment; and that the 1973 amendment of the Par Value Modification Act "mandates that judgment be granted" in favor of plaintiffs. The facts (and findings) are in substance as follows:

On October 8, 1929, the predecessors in interest to the parties herein entered into a written ground lease whereby the property was leased by the lessors to the lessee for a period of 99 years, commencing November 1, 1929. A provision of the lease was: The rental for such 99-year term shall be $1,457,500, which sum the lessee agrees to pay the lessors in installments as follows: $750 on the first day of each calendar month of said term commencing November 1, 1929, to and including May 1, 1934; $1,250 on the first day of each calendar month of said term commencing June 1, 1934, to and including October 1, 2028. "The lessee agrees to pay said rentals to the lessors in gold coin of the United States of America of the present standard of weight and fineness (one dollar containing twenty-five and eight-tenths grains of which twenty-three and twenty-two hundredths grains are fine gold) or its equivalent in lawful money of the United States of America, at such place in the City of Los Angeles, California, as the lessors may, from time to time, in writing, designate as the place for the payment of the rent. But the lessee may make such rental payments by bank check in accordance with prevailing business practices, and the place for the payment of the rent shall be at the Hollywood Office of California Bank in the City of Los Angeles, California, until otherwise specified by the lessors as aforesaid."

A theatre building was constructed on the land; and, through mesne conveyances, the plaintiffs are the lessors, and the defendant is the lessee, of the ground lease.

In June 1933, Congress enacted the Joint Resolution of 1933 as the result of the monetary change referred to as "going off the gold standard." Said joint resolution was thereafter codified in section 463 of title 31 of the United States Code, as follows:

"Provision for payment of obligations in gold prohibited; uniformity in value of coins and currencies;

"(a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

"(b) As used in this section, the term 'obligation' means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term 'coin or currency' means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations. June 5, 1933, c. 48, § 1, 48 Stat. 113."

Since the enactment of said joint resolution in 1933, the lessee has paid and is presently paying the rent due under the herein lease in legal tender money of the United States, including payment of $1,250 for the month of January 1975 and $1,250 for the month of February 1975.

In September 1973, the Congress enacted Public Law No. 93-110 (93d Cong., H.R. No. 6912), which provides in part as follows:

"AN ACT to amend the Par Value Modification Act, and for other purposes: [¶] . . . . .

"Sec. 3. (a) Sections 3 and 4 of the Gold Reserve Act of 1934 (31 U.S.C. 442 and 443) are repealed.

"(b) No provision of any law in effect on the date of enactment of this Act, and no rule, regulation, or order under authority of any such law,

may be construed to prohibit any person from purchasing, holding, selling, or otherwise dealing with gold."

In July 1974, Congress enacted Public Law No. 93-373 (93d Cong., S. 2665, 88 Stat. 445) which provides in part as follows:

"Sec. 2. Subsections 3(b) and (c) of Public Law 93-110 (87 Stat. 353) are repealed and in lieu thereof add the following:

"(b) No provision of any law in effect on the date of enactment of this Act, and no rule, regulation, or order in effect on the date sub-sections (a) and (b) become effective may be construed to prohibit any person from purchasing, holding, selling, or otherwise dealing with gold in the United States or abroad.

"(c) The provisions of subsections (a) and (b) of this section shall take effect either on December 31, 1974, or at any time prior to such date that the President finds and reports to Congress that international monetary reform shall have proceeded to the point where elimination of regulations on private ownership of gold will not adversely affect the United States' international monetary position." Said provisions became effective on December 31, 1974.

The trial court's conclusions of law were in substance as follows: Enforcement of the gold clause provision of the lease pertaining to payment of the rent in gold coin of the United States is prohibited by the provisions of the Joint Resolution of 1933. Defendant is not obligated to make payment in gold coin of the weight and fineness in effect on October 8, 1929, or its equivalent in lawful money of the United States. The Joint Resolution of 1933 was not repealed, either expressly or by implication by the 1973 amendment of the Par Value Modification Act. The gold clause provision of the lease was not and is not a contract for payment in gold coin or gold bullion as a commodity, but was and is a contract for the payment of money. Defendant has fully performed all conditions of the lease to be performed on its part and has fully discharged its obligation to pay rent to plaintiffs for the months of January and February 1975.

(As hereinabove stated, defendant paid $1,250 as rent for each of those months. Plaintiffs alleged in their complaint that the rental due for those months in gold coin or its equivalent was $19,300.)

As above stated, appellants assert that the trial court erred in concluding that the 1973 act did not repeal the Joint Resolution of 1933, expressly or impliedly.

As above shown, section 3, subdivision (a) of the 1973 act expressly repealed sections 3 and 4 of the Gold Reserve Act of 1934 (31 U.S.C., §§ 442, 443). ■ No provision of the 1973 act expressly repealed the Joint Resolution of 1933. ■ A recognized rule of statutory construction is that the expression of certain things in a statute necessarily involves exclusion of other things not expressed—*expressio unius est exclusio alterius*. (See *Gilgert* v. *Stockton Port District*, 7 Cal.2d 384, 387 [60 P.2d 847].)

■ Appellants argue that subdivision (b) of section 3 of said 1973 act impliedly repealed the Joint Resolution of 1933. Subdivision (b), as heretofore stated, provides that "No provision of any law in effect on the date of enactment of the Act, and no rule, regulation, or order under authority of any such law, may be construed to prohibit any person from purchasing, holding, selling, or otherwise dealing with gold."

Appellants assert that subdivision (b) "effectively repealed all laws restricting transactions in gold," and that legislative intent to repeal "all laws which prohibit the private purchase or dealing with gold" is shown by cited statements of a congressional committee that analyzed the bill from which the act arose and by a cited statement by Representative Windall. One of the cited statements of the committee (H.R. Rep. No. 93-203, 93d Cong., 1st Sess., 1973 U.S. Code Cong. & Admin. News 2050, 2052) is that said section 3 of the act "would repeal the statutory and regulating provisions now applying to the ownership of gold . . . Specifically this section would repeal sections 3 and 4 of the Gold Reserve Act of 1934, and all other laws, rules and regulations and orders which prohibit any person from purchasing, holding, selling, or otherwise dealing in gold." The other cited statement by the committee (H.R. Rep. No. 93-203, *supra,* 2062) is that " . . . we approved an amendment repealing Section 3 and 4 of the Gold Reserve Act, which provides . . . that regulations . . . now in effect prohibiting purchase, sale, holding or other dealing in gold, shall be repealed. . . ." The cited statement by Representative Windall is, " . . . Americans should be able to own or deal in gold as they do in any other commodity." (119 Cong. Rec. H. 16970 (daily ed. May 29, 1973).)

As respondent states, those cited statements in effect relate to the purchase, sale, and holding of gold as a commodity. Respondent

concedes that the 1973 act abrogated statutory or regulatory provisions relating to *ownership* of gold as a *commodity;* but respondent does assert that the 1973 act was not intended to affect the Joint Resolution of 1933, which denied gold monetary standing, e.g., for payment of debts in gold.

■ Contrary to appellants' assertion that the intent of the 1973 act was to "effectively repeal all laws restricting transactions in gold," some sections of title 31 of the United States Code remain in effect, for example, section 315b thereof which discontinues gold coinage, and section 446 thereof which provides that all acts inconsistent with said section 315b are repealed. As respondent asserts, appellants are arguing in effect that the gold monetary standard was reinstated by the 1973 act.

Congressional intent regarding the 1973 act was stated by the chairman of the subcommittee which handled the bill, as follows: "I want to emphasize that this would not mean that we intend to allow the writing of contracts in gold, or otherwise change the joint resolution on gold. Our intention is merely to allow individuals to buy, sell and own gold if and when it is possible to do this without sacrificing our national interest."[1] (119 Cong. Rec. 16968 (daily ed. May 29, 1973).) A representative sponsoring the bill stated: "It is essential that the language be quite clear, that what we are proposing is simply the elimination of any impediment upon American citizens from *ownership* of gold." (Italics added.) (119 Cong. Rec. 16980 (daily ed. May 29, 1973).)

Governmental agencies have interpreted the 1973 act as not repealing or modifying the Joint Resolution of 1933.[2] ■ Administrative interpretation of a statute will be afforded great respect by the courts. (*Noroian* v. *Department of Administration,* 11 Cal.App.3d 651, 655 [89 Cal.Rptr. 889].)

---

[1]Subdivision (c) of section 3 of the 1973 act provides, as previously stated, that the provisions of this section shall take effect when the President finds and reports to Congress that "international monetary reform shall have proceeded to the point where elimination of regulations on private ownership of gold will not adversely affect the United States' international monetary position."

[2]For example, the Department of the Treasury issued a news release on December 9, 1974, in response to inquiries whether repeal of the restrictions on private ownership of gold affected "continuing validity" of the Joint Resolution of 1933. The news release stated in part:

"Under the Resolution a contract clause providing for payment in gold, or in United States dollars equivalent to a certain amount of gold, is not enforceable if the subject of the contract is something other than gold, so that gold as a commodity has no relationship to the business being transacted. In such a case, gold would be used solely for the purpose of establishing the value of the obligation. This view is based on judicial

In *Holyoke Power Co.* v. *Paper Co.* (1937), 300 U.S. 324 [81 L.Ed. 678, 57 S.Ct. 485], a lease entered into prior to the Joint Resolution of 1933 provided for payment of rent in "a quantity of gold which shall be equal in amount to fifteen hundred dollars ($1500) of the gold coin of the United States of the standard weight and fineness of the year 1894, or the equivalent of this commodity in United States currency." In 1934 (after Congress passed the Joint Resolution of 1933), the lessor contended that the rent was payable in fine gold as provided in the lease, and the lessee contended that by force of the joint resolution the rent was payable dollar for dollar, in the then prevailing currency. The district court and the circuit court of appeals held in favor of the lessee. The Supreme Court affirmed the judgment, and said (p. 335 [81 L.Ed. at p. 681]): "The obligation was one for the payment of money, and not for delivery of gold as upon the sale of a commodity."

It was also said therein (300 U.S. at p. 337 [81 L.Ed. at p. 682]): "A contract for the payment of gold as the equivalent of money, and, *a fortiori* a contract for the payment of money measurable in gold, is within the letter of the Joint Resolution of June 5, 1933, and equally within its spirit." The court also rejected (pp. 340-341 [81 L.Ed. at pp. 684-685]) an argument that the joint resolution, although made for protection of the monetary system, arbitrarily suppressed the rental covenant and was inconsistent with the Fifth Amendment.

The court therein concluded (p. 341 [81 L.Ed. at pp. 684-685]): "In last analysis, the case for the petitioner amounts to little more than this, that the effect of the Resolution in its application to these leases is to make the value of the dollars fluctuate with variations in the weight and fineness of the monetary standard, and thus defeat the expectation of the parties that the standard would be constant and the value relatively

---

decisions which held unenforceable a lease providing for payment in gold bullion as one method of rent settlement, since the intention of the parties by using gold in the contract was solely to stabilize the dollar value of the rent. *Holyoke Water Power Co.* v. *American Writing Paper Co.*, 300 U.S. 324 (1937); *Emery Bird Thayer Dry Goods Co.* v. *Williams*, 107 F.2d 965 (1939). Similarly, loans of certificates of deposit repayable in gold, or in an amount of dollars measured in terms of gold, would be unenforceable. . . . The United States law making gold clauses unenforceable has been in effect solely during the period in which private ownership of gold by United States citizens was prohibited. Nonetheless, there is nothing inconsistent between private ownership of gold and the Gold Clause Joint Resolution." Also, the Federal Reserve Board issued guidelines as follows: " . . . obligations payable in gold are still unenforceable under the law making it illegal for banks to enter into deposit contracts giving customers an option of taking payment in cash or gold." (Government Issues Warnings on Gold Dealings, Comm. & Finan. chr. 219:2, Dec. 16, 1974.)

stable. Such, indeed, *is* the effect, and the covenant of the parties is to that extent abortive. But the disappointment of expectations and even the frustration of contracts may be a lawful exercise of power when expectation and contract are in conflict with the public · welfare. 'Contracts may create rights of property, but when contracts deal with a subject matter which lies within the control of the Congress, they have a congenital infirmity.' *Norman* v. *Baltimore & Ohio R. Co., supra,* pp. 307, 308. To that congenital infirmity this covenant succumbs."

In the *Norman* case (*Norman* v. *Baltimore & O. R. Co.,* 294 U.S. 240 [79 L.Ed. 885, 55 S.Ct. 407, 95 A.L.R. 1352]), cited in the *Holyoke* case, *supra,* the Supreme Court discussed (p. 295 et seq. [79 L.Ed. at p. 895 et seq.]) the background and purposes of the Joint Resolution of 1933—in essence the purposes of establishing a monetary system not based upon gold and removal of gold as legal tender; discussed clauses of contracts providing for payment in gold, and held (p. 302 [79 L.Ed. at p. 899]) that the gold clauses in the bonds in that case were not contracts for payment in gold coin as a commodity but were contracts for payment of money; discussed (pp. 306-311 [79 L.Ed. at pp. 901-904]) the power of Congress to regulate currency and to establish the monetary system for the country, and held (p. 311) that such gold clauses interfered with the policy of Congress in exercising that authority. The court noted (p. 315 [79 L.Ed. at p. 906]) that according to appellants' contentions, the indebtedness of governmental and industrial obligors under gold clause provisions must be met by an amount of currency determined by the former gold standard, whereas the receipts of such obligors would be determined under the new (nongold) standard, and that dislocation of the domestic economy would be caused by such a disparity of conditions. Then it was said (p. 316 [79 L.Ed. at p. 906]): "We are not concerned with consequences, in the sense that consequences, however serious, may excuse an invasion of constitutional right. We are concerned with the constitutional power of the Congress over the monetary system of the country and its attempted frustration. Exercising that power, the Congress has undertaken to establish a uniform currency, and parity between kinds of currency, and to make that currency, dollar for dollar, legal tender for the payment of debts. . . . The contention that these gold clauses are valid contracts and cannot be struck down proceeds upon the assumption that private parties, and States and municipalities, may make and enforce contracts which may limit that authority. Dismissing that untenable assumption, the facts must be faced. We think that it is clearly shown that these clauses interfere with the exertion of the power granted

to the Congress and certainly it is not established that the Congress arbitrarily or capriciously decided that such an interference existed."

 In the present case, the trial court did not err in concluding that the Joint Resolution of 1973 was not repealed. The joint resolution is not unconstitutional. (See *Holyoke Power Co.* v. *Paper Co., supra,* 300 U.S. 324; *Norman* v. *Baltimore & O. R. Co., supra,* 294 U.S. 240.)

 Appellants' contentions regarding the contractual doctrines of "Impossibility" and "Illegality" are to the effect that if it is impossible or illegal to pay the rent in gold coin, then it should be payable in gold bullion.[3] A similar argument was rejected in the *Holyoke* case, *supra,* 300 U.S. at pp. 334-335 [81 L.Ed. at pp. 680-681]. The trial court herein did not err in concluding that the gold clause provision of the lease was not a contract for payment in gold coin or gold bullion, but was a contract for the payment of money.

The judgment is affirmed.

Lillie, J., and Hanson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 23, 1977.

---

[3]According to respondent, appellants originally contended that payment should be in gold coin of the weight and fineness as it existed on October 8, 1929; and that appellants "shifted" their position on appeal, "acknowledging the impossibility and illegality of paying in gold coin." They now contend that payment should be in gold bullion.