[Crim. No. 20170. First Dist., Div. Two. Jan. 8, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON HERRERA, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Frances Ternus and Richard Lennon, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Thomas A. Brady, Robert R. Granucci, Gloria F. DeHart and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

Raymond C. Brown, Joan W. Cavanagh and Mary Lou Fenili as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

MILLER, J.—Ramon Herrera appeals from the denial of a motion brought by the Board of Prison Terms to recall the sentence imposed for his conviction on four counts of robbery and one count of attempted robbery.

Appellant was convicted in a jury trial on four counts of robbery and one count of attempted robbery (Pen. Code, §§ 211, 211/664)[1] and was also found to have used a firearm in each count (§ 12022.5).

On June 21, 1978, appellant was sentenced by the court to serve nine years and four months in state prison. The court arrived at this sentence by selecting the middle term of three years for one robbery, enhancing this sentence by two years for use of a firearm, and adding four years and four months for consecutive terms.[2]

On June 29, 1979, the Board of Prison Terms (hereinafter the Board) filed a motion with the trial court to recall appellant's sentence on the ground that his sentence was "disparate" when compared to sentences received by similarly situated prisoners convicted of the same crimes. This motion was brought pursuant to the Board's mandate under section 1170, subdivision (f) which requires that body to recommend recall of all sentences which it determines to be disparate.[3] Based on its finding of disparity, the Board recommended that appellant's sentence be recalled and that he be resentenced for a term of six years and eight months. The district attorney filed points and authorities in opposition to the Board's motion. On August 3, 1979, the sentencing court heard and denied the motion.

Since this is the first motion filed pursuant to section 1170, subdivision (f), the instant action presents a question of first impression to this

---

[1]All references to code sections will refer to the Penal Code unless otherwise indicated.

[2]The five counts against appellant involved five victims in two separate incidents. Both incidents occurred on the same night but in separate locations. Three victims were involved in the first incident, and two victims in the later incident. The court imposed consecutive sentences for counts based on separate incidents, as well as for counts based on separate victims within the same incident.

[3]Section 1170, subdivision (f) provides: "(f) In all cases the Board of Prison Terms shall not later than one year after the commencement of the term of imprisonment, review the sentence and shall by motion recommend that the court recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he had not been previously sentenced if the board determines the sentence is disparate. The review under this section shall concern the decision to deny probation and the sentencing decisions enumerated in subdivisions (b), (c), (d) and (e) of Section 1170.3 and apply the sentencing rules of the Judicial Council and the information regarding the sentences in this state of other persons convicted of similar crimes so as to eliminate disparity of sentences and to promote uniformity of sentencing."

court; namely, what is the legal effect of a motion brought by the Board to recall a sentence on the ground of "disparity"?

Appellant contends that a section 1170, subdivision (f) motion creates a rebuttable presumption that the sentence imposed was "incorrect" and that the prisoner is therefore entitled to have the original sentence recalled, unless the trial court overcomes this presumption.

Respondent, on the other hand, contends that the motion does not create any presumption, that the trial court can grant or deny the motion in its discretion, and that there is absolutely no burden which must be met to support a denial of the motion.[4]

We conclude that neither appellant nor respondent is wholly correct in its interpretation of the legal effect of a motion brought pursuant to section 1170, subdivision (f). Instead we hold that although a section 1170, subdivision (f) motion does not create a presumption that a prisoner is entitled to be resentenced, the Board's finding of disparity is entitled to great weight in the trial court's determination of whether resentencing is proper.

█ Preliminarily, we deal with respondent's argument that denial of a section 1170, subdivision (f) motion is nonappealable.

Respondent argues that the case at bench is not appealable by virtue of *People* v. *Niren* (1978) 76 Cal.App.3d 850 [143 Cal.Rptr. 130]. In *Niren*, defendant pled guilty to arson and was sentenced to prison. The court then requested a report pursuant to former section 1168. At that time former section 1168 authorized the court to recall a commitment and to impose a more lenient sentence if the court, in its discretion, thought it proper to do so. The trial court in *Niren* refused to recall the sentence because it received an unfavorable report on defendant from the Director of Corrections. Subsequent to this denial, defendant made his own motion to recall the sentence, which was denied.

---

[4]Respondent has also requested that this court "enunciate a rule of criminal procedure" which would require that a court wait until a case had reached appellate finality before it could adjudicate a section 1170, subdivision (f) motion, unless the delay would prejudice a prisoner's opportunity to have his sentence reduced. However, the record indicates that this issue was not raised below and the question is therefore not properly before the court. For this reason we decline to rule on the issue. (*Dimmick* v. *Dimmick* (1962) 58 Cal.2d 417, 422-423 [24 Cal.Rptr. 856, 374 P.2d 824]; *Dunn* v. *Dunn* (1960) 180 Cal.App.2d 839, 841-842 [4 Cal.Rptr. 748].)

On appeal from defendant's motion, the Court of Appeal held that defendant had no standing to appeal the denial of his motion for recall. This holding was based on two earlier cases which had held that recall proceedings under section 1168 could not be initiated by a defendant. (*Thomas* v. *Superior Court* (1970) 1 Cal.3d 788, 790 [83 Cal.Rptr. 327, 463 P.2d 709]; *Alanis* v. *Superior Court* (1970) 1 Cal.3d 784, 786 [83 Cal.Rptr. 355, 463 P.2d 707].) Since defendant had no standing to make a motion to recall the sentence under former section 1168, the Court of Appeal reasoned that the trial court's denial of the motion was nonappealable.

The case at bench differs from *Niren* in one crucial respect. In *Niren* defendant improperly initiated a motion to recall his sentence at the trial court level; he then appealed from the denial of his own improperly brought motion.

In the instant action, there is no question that the motion was properly initiated by the Board. The question here is: Assuming that the motion for recall was properly initiated by the Board, does the prisoner have the right to appeal from the denial of that motion *even though he could not have initiated the motion himself?*

Section 1237, subdivision 2 provides that a criminal defendant may appeal "[f]rom *any* order made after judgment, affecting the substantial rights of the party." (Italics added.) Application of this section is not confined to orders resulting from motions initiated by defendant; rather, by its own terms, the statute applies to "any" order affecting the substantial rights of the party.

The "right" which appellant is asserting is his "right" to receive a sentence which is not disparate when compared to sentences received by other similarly situated convicts. Underlying this is appellant's right to liberty—and to suffer only that deprivation of liberty which his crimes warrant.

The facts of this case are analogous to those of *People* v. *Coleman* (1978) 86 Cal.App.3d 746 [150 Cal.Rptr. 415]. In *Coleman*, the defendant was committed to a state hospital for an indeterminate period. Defendant later petitioned the court for his release under former section 1026a. After a trial by jury on the issue of defendant's sanity, a verdict was returned denying petitioner's request for release.

Although no specific statutory provision provided for an appeal in those circumstances, the *Coleman* court held that the defendant could properly appeal from the denial for the request for release by authority of section 1237, subdivision 2. "Since an order denying release following restoration proceedings results in continued indefinite commitment to a state hospital or other medical facility, a fortiori it must be construed as an appealable 'order made after judgment, affecting the substantial rights' of the defendant. (§ 1237, subd. 2)." (P. 750.)

The denial of the order in this case will not result in "continued indefinite commitment." However, it will result in appellant continuing to serve a sentence which the Board has found to be "disparate" given appellant's crime and past criminal record. As a result of the trial court's order, appellant will spend three extra years in a penitentiary over and above the time the Board has determined other similarly situated convicts received for similar crimes.

The determinate sentencing law (DSL) in general, and the review provisions of section 1170, subdivision (f) in particular, indicate that the Legislature believed that a prisoner has a "substantial right" to receive a sentence which is consistent with the sentences received by other similarly situated prisoners. Since the trial court's order denying the motion for recall clearly "affected" this "substantial right," the case is appealable by virtue of section 1237, subdivision 2.

*The Disparate Review Process*

In order to determine the legal effect that should be given to the Board's finding of disparity, it is necessary to examine the process which leads to that finding.

The disparate review process is not designed to uncover legal error in sentencing. Instead, the process mandated by section 1170, subdivision (f) concerns itself with the statistical uniformity of DSL sentences imposed on those convicted of similar crimes under similar circumstances. (Cal. Admin. Code, tit. 15, § 2100 (a).)

The Board has gathered information on the DSL sentences imposed in this state. This information includes data on each DSL prisoner's

criminal history, his social history, the circumstances of the offense, and the sentence itself.

Utilizing this information, the Board undertakes a three-step process to identify "disparate" sentences. First, the Board identifies other cases to which the subject case is similar. Second, the Board uses statistical analysis to identify "variant" cases; that is, cases that do not conform to an "observed sentencing pattern" occurring within the cases grouped as "similar." These variant cases are distinguished from "nonvariant cases" (those cases which do conform to an observed sentencing pattern occurring within the cases grouped as similar). In the third step of the process, the variant cases are examined on a case by case basis to determine if there are other factors present in those cases (not taken into account in the original statistical analysis) that would explain or justify the more severe sentence. If no additional aggravating circumstances are identified, the Board, in its discretion, can find that the sentence is "disparate" and must recommend recall of the sentence pursuant to section 1170, subdivision (f).

In the present action, appellant's case was compared to 54 other DSL cases involving multiple robberies. The Board found that judges sentencing multiple count robbery cases generally imposed consecutive sentences for counts which occurred in separate "incidents," but imposed concurrent sentences for counts based on separate victims in the same "incident." The Board identified seven variant cases out of the sample of 54 multiple robbery cases that did not conform to this observed sentencing pattern. In six of the variant cases the Board identified "unusual" aggravating circumstances that justified the more severe sentences. These aggravating circumstances included unusually long and serious criminal histories of those sentenced, actual injury to the robbery victims, the loss of large amounts of money, "mistreatment" of the victims, and the use of "overt" threats in the robberies.

However, the Board concluded that the variant sentence imposed in appellant's case could not be explained by any similar aggravating circumstances. Rather, the Board found that appellant's criminal, social, and personal history, as well as the circumstances surrounding the commission of his robberies, were more like the histories and circumstances found in the "nonvariant" cases, than those found in the variant cases. Therefore, the Board concluded that appellant's sentence was "disparate" and brought its motion to recall appellant's sentence.

*The Legal Effect of a Section 1170, Subdivision (f) Motion*

█ We first deal with appellant's contention that the Board's finding of "disparity" creates a rebuttable presumption that the sentence is "incorrect" and should be recalled.

Appellant cites no authority to support this construction of section 1170, subdivision (f). The statute makes no reference to presumptions of any kind. It merely states that the Board shall "[i]n all cases . . . review the sentence and shall by motion *recommend* that the court recall the sentence and commitment previously ordered and resentence the defendant . . . if the board determines the sentence is disparate." (§ 1170, subd. (f), italics added.) The statute provides no guidance as to what procedure should be followed in hearing the motion, nor does it require the trial judge to make findings of any kind in ruling on the motion.

The Legislature is well aware that it can require the judge to follow a specific procedure or to make findings through the use of appropriate statutory language. For example, section 1170, subdivision (b) essentially creates a presumption in favor of imposing the middle of three possible terms since the statute requires the presence of additional factors for imposition of either the highest or lowest term. The absence of similar language in section 1170, subdivision (f) indicates that the Legislature did not intend the motion to create a presumption in favor of recall.

We also note that a finding by the Board that a sentence is "disparate" does not mean that the sentence was imposed in violation of the law. Therefore, even were we to conclude that the Board's determination was conclusive on the issue of whether a given sentence was disparate, this would not indicate that the sentence is "incorrect," if by "incorrect" appellant means "unlawful."[5]

---

[5]However, a portion of appellant's sentence was clearly imposed in violation of the law. Appellant argues and respondent concedes that the trial court added a consecutive term of one year and eight months for count IV. The one-year enhancement derived from the imposition of a consecutive term for robbery. The eight additional months were imposed because of the finding in count IV that appellant had used a firearm within the meaning of section 12022.5.

In *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396] (decided after sentencing in this case) the Supreme Court held that no enhancement could be imposed for use of a firearm in a subordinate count unless the underlying offense was listed in section 667.5, subdivision (c). Since robbery was not one of the offenses listed

In view of this analysis, we find that a motion brought by the Board pursuant to section 1170, subdivision (f) does not create a presumption that the sentence is "incorrect" (unlawful) or that the prisoner is entitled to have his sentence recalled.

Although respondent is correct in its first contention that a section 1170, subdivision (f) motion does not create a presumption in favor of resentencing, its second contention—that there is no burden which must be met to deny the motion—would, if supported by this court, rob the review procedure under section 1170, subdivision (f) of its clearly intended impact: to eliminate disparity among sentences and to promote uniformity of sentences. Indeed, elimination of disparity among sentences is the predominant policy underlying the entire DSL. (§ 1170, subd. (a)(1); see also §§ 1170.1, subds. (a), (d), and (f) which contain sentencing rules designed to promote uniformity of sentencing.)

The apparent intent of the Legislature in authorizing the review procedure under section 1170, subdivision (f) was to inform the trial judge that a sentence he or she imposed may be "disparate," and therefore contrary to the major purpose of the DSL. The Board provides sentencing courts with information unavailable from any other source about similar cases and the sentences actually imposed in those cases. It does so to implement the DSL's strong policy in favor of uniformity of sentences for those convicted of similar crimes under similar circumstances.

■ The Board argues in its amicus brief that its determination that a sentence is disparate is entitled to great weight. We agree.

The Board has been charged under section 1170, subdivision (f) with identifying "disparate" sentences. It has chosen to do this by undertaking the analysis described earlier in this opinion. In essence, the Board has construed a "disparate" sentence to be a sentence which is identified as disparate by that analysis.

The construction of a statute by the officials charged with its administration, although not controlling, is entitled to great weight. (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118

---

in that section at the time of sentencing, it was improper to impose a consecutive term for firearm use.

Therefore, the eight-month enhancement imposed in count IV for use of a firearm (§ 12022.5) must be stricken and the sentence modified accordingly.

Cal.Rptr. 473, 530 P.2d 161]; *Whitcomb Hotel, Inc. v. Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405]; *County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 643 [122 P.2d 526].) Therefore, since it is essentially construing the meaning of the term "disparate" as used in section 1170, subdivision (f), the Board's determination that a sentence is disparate is entitled to serious consideration.

■ In determining the merits of a motion brought under section 1170, subdivision (f), a trial court must undertake a two-part analysis: First, it must determine whether the sentence imposed was indeed disparate. Secondly, if the court finds that the sentence is disparate, this fact must be given great weight in the court's decision whether or not to recall the sentence.

Unfortunately, even though the term has been frequently used in the case law, no California case has defined the meaning of "great weight".

For the purposes of a motion brought pursuant to section 1170, subdivision (f), a trial court will have met its obligation of according the Board's finding of disparity "great weight" in the first part of the analysis described above, if the record shows that the court seriously considered the information provided by the Board, and attempted to discern whether, when compared to sentences imposed by his colleagues, the sentence he imposed in the case under review was "disparate." The judge is not required to make findings as to why he disagrees with the Board's determination that a sentence is disparate; however, as a practical matter, a judge will want the record to show the precise reason he disagreed with the Board's finding, as this will provide evidence that he undertook the inquiry necessary to meet the great weight standard.

If, after giving serious consideration to the Board's finding, a judge finds that the sentence he imposed was not disparate no further inquiry is necessary and the judge may deny the motion. On the other hand, if the judge agrees with the Board's finding that the sentence imposed was disparate, he is required to undertake the second part of the analysis described above.

The procedure that must be undertaken to meet the "great weight" standard in the second part of the analysis does not lend itself to easy description or definition. Typically, however, it would require that the

judge question the "observed sentencing pattern" relied on by the Board. Even though the judge may agree that the sentence he imposed does not conform to the "observed sentencing pattern" relied on by the Board (and is therefore disparate), he may question the underlying rationale of the sentencing pattern practiced by the majority of his colleagues. In other words, observed sentencing patterns should be treated as guidelines to help promote uniformity of sentencing; they should not function as immutable rules which place judicial discretion in a straight jacket.

■ The final issue to be resolved in this case is whether the trial judge accorded great weight to the Board's finding of disparity.

The judge below conducted a full hearing on the Board's motion. This hearing supplemented the lengthy briefs already filed in support of and in opposition to the motion. The appellant, the respondent and the Board were represented by counsel at the hearing, and each party was given an opportunity to present its position regarding the motion. An operations research specialist for the Board was called as a witness, was subjected to voir dire examination by the court and was also examined by both respondent's and the Board's counsels. The transcript of this proceeding gives every indication that the trial judge seriously considered the information provided by the Board and attempted to discern whether the sentence he had imposed was indeed disparate.

Furthermore, the decision to deny the motion was based on the trial court's specific finding that the sentence it had imposed was not disparate. This finding was in turn supported by specifically enumerated reasons. These reasons included: (1) The fact that the sentence actually imposed was that suggested by the probation department; (2) the appellant's extensive criminal history; and (3) the questionable criteria the Board used to distinguish "disparate" from "variant" sentences.[6]

---

[6]One specific criterion the trial judge questioned was the use of "overt threats" as an aggravating factor justifying a "variant" sentence. The term "overt threat" was defined by the Board's counsel as a *spoken* threat.

The judge's criticism of the use of this factor as an aggravating circumstance should be taken to heart by the Board. It is difficult to imagine why a criminal who points a gun at a robbery victim (thereby indicating through nonverbal communication that he intends to do serious harm to the victim if his instructions are not quickly followed) should be subject to a less severe sentence than a criminal who bolsters this already crystal clear message with a superfluous spoken threat in the order of "hand over your money or I'll fill you full of lead." The spoken words add nothing to the message and therefore should add nothing to the sentence.

The record indicates that the judge below, although disagreeing with the Board's finding of disparity, nonetheless accorded that finding great weight. Since the judge found that the sentence he imposed was *not* disparate, he was not required to undertake the second part of the analysis described above.

The trial court's denial of the Board's motion is affirmed. The eight-month enhancement imposed in count IV for use of a firearm is stricken and the sentence modified accordingly.

Taylor, P. J., and Smith, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 1, 1982.