[No. A019825. First Dist., Div. Four. June 24, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY LEE SHEPEARD, Defendant and Appellant.

**COUNSEL**

Michael S. McCormick, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ANDERSON, P. J.**—Gary Lee Shepeard (appellant) appeals from the Contra Costa County Superior Court order refusing to recall and resentence him after a hearing conducted pursuant to Penal Code section 1170, subdivision (f).[1]

On March 27, 1981, after negotiations with the prosecutor, appellant pled guilty in one information to count I, possession of methamphetamine for sale (Health & Saf. Code, § 11378) and count II, possession of a concealable firearm by an ex-felon (Pen. Code, § 12021), and in another information to two counts of possession of a firearm by an ex-felon.

In open court the prosecutor announced the terms of the plea agreement as follows: Appellant would plead guilty to the above four counts and two pending related felony charges (§ 246—discharging a firearm in an inhabited dwelling and § 12021—possession of a firearm by an ex-felon), and several pending unrelated misdemeanor charges would all be dismissed. Appellant agreed to accept a maximum sentence of four years and four months (fifty-two months).[2]

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

[2]Because the court just before pronouncing its finding that "the sentence imposed is not disparate" did not remember whether the sentence of four years and four months had been imposed pursuant to section 1192.5 or in the exercise of its discretion, and because counsel for appellant insisted that the court did exercise its discretion in agreeing with the district attorney's position and even offered to be "sworn to that fact," and because counsel for *both* parties at oral argument represented to this court that this case was not a "negotiated sentence" case, we set forth the entry of plea and waiver in relevant part thereto in *haec verba:*

"Q. [by district attorney]. What's going to happen, Mr. Shepard [*sic*], is as a result of entering pleas of guilty to one count of 11378 and three counts of 12021, you are going to be given the aggravated term, that is three years on one count of 11378 in State Prison.

"Do you understand that?

"A. [by defendant]. Yes.

"Q. You are further going to be sentenced on two counts of 12021 consecutively, which

Pursuant to the plea and sentence negotiations, appellant was sentenced on the first information (case No. 24925) to the upper term of three years on count I and to a consecutive term of eight months on count II. In case No. 25273, he was sentenced to an additional term of eight months on count I, to run consecutive to the sentence imposed on the first information and to a term of two years on count II, to run concurrently. As agreed, his sentence term totaled fifty-two months.

Two months later the Board of Prison Terms (the Board) notified the superior court that the sentence imposed on appellant was disparately long—by eight months (due to the imposition of one of the consecutive terms). The Board recommended that appellant's sentence be recalled and that he be resentenced to a total term not to exceed 44 months.

After reviewing and giving great weight to the Board's report and hearing testimony, the sentencing court found that appellant's sentence was not disparate and accordingly refused to recall and resentence appellant. This appeal followed.

I

Section 1170, subdivision (f), requires the Board to review sentences imposed under the determinate sentencing law (DSL).[3]     The disparate

---

is an additional 16 months.
"Do you understand that?
"A. Yeah.
"Q. And a total time that you're going to serve in State Prison is going to be four years and four months.
"Do you understand that?
"A. Yeah.
"Q. That's a maximum time.
"Do you understand that?
"A. Yes.
"Q. Further, the People have agreed to dismiss all the other felonies pending against you in Richmond on the same docket that we've already brought two cases under.
"Do you understand that?
"A. Yeah.
"Q. And we've also agreed to dismiss pending misdemeanors in the Bay Judicial District.
"Do you understand that?
"A. Yes."
And at the conclusion of that same session after having accepted the waiver, the court imposed sentence as follows: "And by virtue of the plea bargain which has been entered into appropriately in this Court, the Court is going to sentence the defendant to State Prison for violation of Section 11378, that being Count 1, and Information 24925, for the aggravated term of three years.
"In addition thereto and consecutive thereto, the Court will order that the defendant be committed for a period of eight months on Count 2 and Information 24925, and additionally, will sentence the defendant in 25273, Count Number 1 to an additional eight months, that eight months to be consecutive to the counts that I just made consecutive to Count Number 1 in 24925, for a total period of time of four years and four months."
[3]Section 1170, subdivision (f), provides: "(1) Within one year after the commencement

sentence review process assumes that the sentence under scrutiny is legally correct; its exclusive concern is with the statistical uniformity of DSL sentences imposed on those convicted of similar crimes under similar circumstances. (*People* v. *Herrera* (1982) 127 Cal.App.3d 590, 597 [179 Cal.Rptr. 694].)

Apparently the Board compiles data on all DSL prisoners for use in a three-step process designed to identify disparate sentences. (See *People* v. *Herrera, supra,* at pp. 597-598.)

Chairman Ray Brown's communication to the sentencing court herein described the process: First, an "automated sentence review"[4] indicated that the sentence imposed on appellant warranted further scrutiny by the Board; next, the case was referred to the sentence review unit (the Unit) for further review as a "variant" case, i.e., one whose sentence differs from that of other comparable cases. Appellant's case was then compared with 31 other offenders sharing the following common factors: drug possession; on supervised release/probation at time of the offense; no prior violent juvenile convictions; no prior adult state/federal prison terms; no injured victims; and no weapon use by accomplices. The Unit concluded that a substantial difference existed between the sentence imposed on appellant and those in the "comparison group." In the final phase, the Unit submitted a detailed report to a panel of the Board. The panel concluded that appellant's sentence was in fact disparate. The Board then recommended recall and resentencing. (See fn. 2, *ante,* at p. 582.)

Within the prescribed statutory period the sentencing court held a hearing to determine whether appellant's sentence was disparate and presumably if so found, whether it should be recalled. At the disparate sentencing hearing, the Board's report was received into evidence and the court noted that the

---

of the term of imprisonment, the Board of Prison Terms shall review the sentence to determine whether the sentence is disparate in comparison with the sentences imposed in similar cases. If the Board of Prison Terms determines that the sentence is disparate, the board shall notify the judge, the district attorney, the defense attorney, the defendant, and the Judicial Council. The notification shall include a statement of the reasons for finding the sentence disparate. [¶] Within 120 days of receipt of this information, the sentencing court *shall* schedule a hearing and *may* recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if the defendant had not been sentenced previously, provided the new sentence is no greater than the initial sentence. In resentencing under this subdivision the court shall apply the sentencing rules of the Judicial Council and shall consider the information provided by the Board of Prison Terms. [¶] (2) The review under this section shall concern the decision to deny probation and the sentencing decisions enumerated in paragraphs (2), (3), (4), and (5) of subdivision (a) of Section 1170.3 and apply the sentencing rules of the Judicial Council and the information regarding the sentences in this state of other persons convicted of similar crimes so as to eliminate disparity of sentences and to promote uniformity of sentencing." (Italics added.)

[4]Presumably a computer which, at least in 1981, was affectionately nicknamed "Judge."

report was entitled to great weight. The district attorney called two witnesses: the Board's sentence review analyst and the assistant counsel for the Board. Both witnesses testified that when reviewing appellant's sentence for disparity, the Board was aware that some charges were dismissed pursuant to plea negotiations between appellant and the prosecutor. However, the Board was not aware of the nature of those dismissed charges. The fact that a sentence is the result of a plea agreement is noted in the DSL prisoner's file, but it is the Board's policy not to use the negotiated plea as a factor "to establish comparability between the case that is being reviewed and other cases." The witnesses testified that in appellant's case, had the Board known that firearm use, a dismissed charge, was involved, that factor might have altered the relevant comparison group and potentially the Board's ultimate finding of disparity.

In the present case, it is clear that the trial court has met the obligations imposed upon it by statute and by *People* v. *Herrera, supra,* 127 Cal.App.3d 590. *Herrera* established a two-part analysis: (1) the trial court must determine whether a sentence is in fact disparate; and (2) if the sentence is found to be disparate, the judge must then decide whether to recall the sentence using the " 'observed sentencing pattern' " as a guideline. (At pp. 601-602.)

In its determination under part I of the *Herrera* analysis, a trial court must accord "great weight" to the Board's finding of disparity. If the record shows that the trial court seriously considered the information provided by the Board, then the trial court has met its burden under part I of the analysis. If the court finds that the sentence is not disparate, no further inquiry is necessary, and the trial court may then refuse to resentence the defendant. (*People* v. *Herrera, supra,* at p. 601.)

Herein the trial court properly found that appellant's sentence was not disparate. The court was required to do no more.[5] Therefore, we affirm the trial court's finding that appellant's sentence is not disparate and its refusal to resentence him.

## II

The instant case presents an issue not raised in *Herrera* or *Mitchell:* Whether a sentence that was negotiated by the parties and approved by the

---

[5]Although the court did not state its reasons for disagreeing with the Board's finding of disparity (as it is not required to do so under *People* v. *Mitchell* (1984) 152 Cal.App.3d 433, 437 [199 Cal.Rptr. 507]), there is ample testimony in the record to support a finding that the comparison group used by the Board in appellant's case was not valid. The Board failed to include firearm use as a relevant factor in selecting the appropriate comparison group. Both witnesses testified that had the Board factored in the dismissed firearm use charge, it might not have found the sentence disparate.

court is subject to disparate sentencing review at all. The answer is not clear.

■    The negotiated disposition has long been an important factor in the administration of criminal law and it has been judicially sanctioned as an appropriate method of disposing of criminal prosecutions. (*People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409]; *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].) This long established practice of plea negotiation was recently codified in 1970 and as codified specifically provides for binding sentence agreements between the court and the parties.[6]

A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound. In exchange for the defendant's guilty plea, the prosecutor typically may agree to dismiss certain charges then pending against the defendant or the defendant may be permitted to plead guilty to a lesser offense than that originally charged. The agreement may also fix the sentence to be imposed. (§ 1192.5, fn. 6, *ante; Scoggins* v. *Superior Court* (1977) 65 Cal.App.3d 873, 876-877 [135 Cal.Rptr. 619].) Both parties gain certain benefits from the agreement: the People receive the benefit of defendant's vulnerability to a term of punishment and the prosecutor is relieved of the time and expense of trial;[7] the defendant escapes the possibility of a much graver sentence if he is successfully prosecuted for all possible charges. (*In re Ibarra* (1983) 34 Cal.3d 277, 287 [193 Cal.Rptr. 538, 666 P.2d 980]; *People* v. *West, supra,* 3 Cal.3d at pp. 604-605; *People* v. *Collins* (1978) 21 Cal.3d 208, 215 [145 Cal.Rptr. 686, 577 P.2d 1026].)

■    It is now well established that both the People and the accused will be strictly held to the terms of a plea agreement. (*People* v. *Caron* (1981) 115 Cal.App.3d 236, 246 [171 Cal.Rptr. 203]; *In re Troglin* (1975) 51 Cal.App.3d 434, 438 [124 Cal.Rptr. 234].) Where the sentence imposed

---

[6]Section 1192.5 provides in part: "Upon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, . . . *the plea may specify the punishment* to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it. [¶] Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on such plea to a punishment more severe than that specified in the plea and *the court may not proceed as to such plea other than as specified in the plea.* [¶] . . . . The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea." (Italics added.)

[7]To spare victims and citizen-witnesses the inconvenience of attending numerous sessions and being subjected to rigorous and often embarrassing questioning often (and rightfully so) a concerned prosecutor is persuaded to compromise.

upon a defendant, and each of its components, is based upon the defendant's express acceptance of it as part of an overall plea agreement, and the sentence is otherwise lawful, the defendant is to be held to that agreement. (*People* v. *Alvarado* (1982) 133 Cal.App.3d 1003, 1024 [184 Cal.Rptr. 483].)

The record herein clearly shows that prior to the entry of the plea, appellant, who was represented by counsel at all times, voluntarily waived his rights and was fully aware of the consequences of his plea. Appellant neither moved to have his plea set aside, nor did he appeal the judgment. Instead, he accepted the benefits of the plea agreement. The question is whether the Legislature intended to allow him to avoid his responsibility pursuant to that agreement by requiring the court to hold a hearing, requiring the court to give great weight to the Board's recommendation, and authorizing the court to recall and reduce the sentence contrary to the plain terms of the agreement.

Appellant asserts that a court which has approved a plea pursuant to section 1192.5 is not bound by the terms of the agreement and may reduce the length of a defendant's sentence if it finds the sentence to be disparate within the meaning of section 1170, subdivision (f). In essence, appellant contends that section 1170, subdivision (f), mandates review of *all* DSL sentences, including those imposed pursuant to a sentence agreement.

It has long been the rule that courts will not construe statutes in a manner leading to absurdity or manifest injustice: "The rule by which we are to be guided in construing acts of Parliament is to look at the precise words, and to construe them in their ordinary sense, unless it would lead to an absurdity or manifest injustice; and if it should, so to vary and modify them as to avoid that which it certainly could not have been the intention of the legislature should be done." (Parke, B., in *Perry* v. *Skinner* (1837) 2 M. & W. 471, 476.)

To apply the disparate sentence review process to a negotiated plea would be meaningless. By its own admission the Board does not have adequate information from which to make a relevant comparison in order to determine whether a negotiated sentence is disparate. The Board does not know the nature of any dismissed charges, a factor that a sentencing judge may, in many instances, consider in determining the proper sentence.[8] The sen-

---

[8]In *People* v. *Harvey* (1979) 25 Cal.3d 754, 758-759 [159 Cal.Rptr. 696, 602 P.2d 396], the Supreme Court upheld the authority of the sentencing court to take into account certain facts underlying charges dismissed pursuant to a plea agreement so long as those facts are transactionally related to the offense to which the defendant pled guilty. (See also *People* v. *Guevara* (1979) 88 Cal.App.3d 86, 92-94 [151 Cal.Rptr. 511].)

tencing judge is uniquely best able to make the proper sentencing determination, for the court has available to it the independent agency of probation to conduct a thorough and unbiased investigation. And following that, it has the benefit of both counsels' analyses and conclusions and their ability to develop further evidence if warranted. Suffice it to conclude that the judge, and not an agency of the executive branch of government, is best able to fashion the appropriate sentence.[9]

Moreover, rule 440, California Rules of Court (one of a series of rules promulgated by the Judicial Council pursuant to § 1170.3 in order to promote uniformity in sentencing under § 1170), expressly provides that the plea agreement itself constitutes an adequate reason for the imposition of the specified punishment.[10] Thus it can be argued, that at a disparate sentence review the trial court need only justify its imposition of the original sentence on the grounds that it was one of the terms of the plea agreement.

But does the disparate sentence review statute itself exclude review of sentences imposed pursuant to agreement? Section 1170, subdivision (f) provides first as follows: "(1) . . . the Board of Prison Terms shall review *the sentence* to determine whether the sentence is disparate in comparison with the sentences imposed in similar cases." (§ 1170, subd. (f), fn. 3, italics added.) Appellant suggests that the Legislature intended "the sentence" to mean "all determinate sentences" including those sentences imposed pursuant to a different statute according to a plea and sentence agreement.[11]

But in construing its scope appellant neglects to consider the second paragraph of that very subdivision—a subdivision which limits the scope of disparate sentence review to the following specifically enumerated decisions of a sentencing court: (1) the decision to deny probation; (2) the sentencing decision to impose the upper or lower prison term; (3) the sentencing decision to impose concurrent or consecutive sentences; (4) the sentencing

---

[9]We are also mindful that a human judge is probably more responsible to the citizens of his or her community than a computer in Sacramento. We further note that this observation is equally applicable to all disparate sentence reviews and is not limited to review of only those sentences imposed pursuant to mutual agreement.

[10]Rule 440(a), California Rules of Court, provides: "If a plea of guilty or nolo contendere was entered pursuant to section 1192.5 and the plea was accepted by the prosecuting attorney in open court and was conditionally approved by the court, the defendant's specification of the punishment and the prosecuting attorney's acceptance thereof in open court constitutes an adequate reason for the imposition of the punishment specified."

[11]Appellant also relies in part on 60 Ops.Cal.Atty.Gen. 143, 147 (1977) wherein the Attorney General stated that the Board has a duty "to review all persons sentenced to prison . . . ." Again, appellant's emphasis on the use of the word "all" is misplaced as the opinion of the Attorney General was concerned only with the meaning of the word "disparate" and the applicability of the statute to a trial court's decision to grant or deny probation.

decision to consider an additional sentence for prior prison terms; and (5) the sentencing decision to impose an additional sentence for being armed with a deadly weapon, using a firearm, an excessive taking or damage, or the infliction of great bodily harm.[12] Paragraph (2) does *not* include the trial court's decision to approve a negotiated plea and sentence pursuant to section 1192.5. Query whether the maxim *"expressio unius est exclusio alterius"* (the enumeration of specific items in a statute necessarily excludes those not enumerated) compels us to conclude that had the Legislature intended to subject the decision to approve negotiated sentences to disparate sentence review, it would have included that subject along with those sentencing decisions it did enumerate. (*Henderson* v. *Mann Theatres Corp.* (1976) 65 Cal.App.3d 397, 403 [135 Cal.Rptr. 266].)

We next question whether the very section pursuant to which the appellant herein was sentenced prohibits the court from proceeding in any manner inconsistent with that plea: "Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in *this* section, cannot be sentenced on such plea to a punishment more severe than that specified in the plea *and the court may not proceed as to such plea other than as specified in the plea.*" (§ 1192.5, italics added.) Does section 1192.5 render the sentencing court powerless to act upon the sentence in any manner other than as expressly provided for in the plea? Certainly the plea did not provide for disparate review; nor did it authorize the court to reduce the sentence by eight months.

It must also be recognized that at the time the Legislature enacted section 1170, subdivision (f), section 1192.5 was already the law and it then also provided that "the court may not proceed to such plea other than as specified in the plea." ■ We must also assume that in passing a new statute, the Legislature acted with full knowledge of the state of the law at the time. (*In re Misener* (1985) 38 Cal.3d 543, 552 [213 Cal.Rptr. 569, 698 P.2d 635].)

While we decide it unnecessary to answer whether disparate sentence review applies to negotiated sentences at all in order to determine the issue here presented, we invite the Legislature to address the question.

The judgment is affirmed.

---

[12]See section 1170, subdivision (f), footnote 3, *ante.*

Section 1170.3 provides in part: "The Judicial Council shall seek to promote uniformity in sentencing under Section 1170, by: [¶] (a) The adoption of rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the courts decision to: [¶] . . . (2) Impose the lower or upper prison term. [¶] (3) Impose concurrent or consecutive sentences. [¶] (4) Consider an additional sentence for prior prison terms. [¶] (5) Impose an additional sentence for being armed with a deadly weapon, using a firearm, an excessive taking or damage, or the infliction of great bodily injury."

Channell, J., concurred.

POCHÉ, J.—I concur in the judgment of this court which consists of the determination in part I that the trial court did not err in refusing to recall the sentence it had previously imposed on appellant. I do not join, however, any of the discussion in part II of the lead opinion; part II is logically inconsistent with part I and with the judgment of this court.

In part II, my colleagues find it "unnecessary" to decide what they have necessarily determined in the holding of part I: namely, that the trial court had subject matter jurisdiction over the task which we three praise it for exercising so well in part I. I submit you cannot have it both ways; either the trial court had jurisdiction to review the sentence it previously imposed, or it did not. By reviewing the trial court's action on the allegedly disparate sentence, my colleagues and I have answered the jurisdictional question in the affirmative: (1) the trial court had jurisdiction under Penal Code section 1170, subdivision (a)[1] to review the sentence it imposed in light of the Board of Prison Terms' determination that the sentence was disparate; and (2) the trial court, in exercising that jurisdiction, did so properly.

A convincing argument has yet to be made to support the view that bargained for sentences are exempt from the disparate sentence review procedure set forth in section 1170, subdivision (f). Perhaps that void stems from the clear intent of the Legislature that all sentences, whether bargained for or not, are to be subjected to disparate review. In other words, the legislation allows for no exception to that procedure.

My colleagues seem to admit that the statute in its literal terms applies to all sentences but contend that the Legislature could not have meant what it said because they believe such review would be "meaningless." (See majority opn., *ante,* p. 587.)

It is not meaningless at all. That a sentence is negotiated does not guarantee that it will not be disparate when compared to other sentences imposed under the determinate sentence law (DSL). Where a negotiated sentence bears little or no resemblance to the quantum of punishment being imposed in similar circumstances throughout this state, it is the duty of the Board of Prison Terms to call that disparity to the attention of the trial court. The Legislature has said no more in the enactment of subdivision (f) of section 1170. Beyond that pronouncement, "the wisdom of the statutory sentencing scheme of the DSL is not an issue to be considered by this court. . . ." (*In re Atiles* (1983) 33 Cal.3d 805, 813 [191 Cal.Rptr. 452, 662 P.2d 910].)

---

[1]All further statutory references are to the Penal Code.

My colleagues, however, do not stop here. Part II becomes a letter from them to the Legislature asking for deregulation of the sentencing industry which they view as a jural monopoly. They express a dislike for any review of any sentence by any person or persons not anointed with judicial oils. In this regard, my colleagues are quite candid in their agenda: "We are also mindful that a human judge is probably more responsible to the citizens of his or her community than a computer in Sacramento. We further note that this observation is equally applicable to all disparate sentence reviews and is not limited to review of only those sentences imposed pursuant to mutual agreement." (See majority opn., *ante,* p. 588, fn. 9.) The "computer" referred to is presumably the Board of Prison Terms, a group of distinguished citizens appointed by the Governor and confirmed by the Legislature.

Part II of the majority opinion thus becomes extremely important because it turns the California Official Reports into the judicial equivalent of the Op-Ed page of your local newspaper. Appellate justices no longer decide only the issues necessary for resolution of the cases before them; now they can offer their views on various questions of the day which formerly were the province of the legislative and executive branches of our government.

A petition for a rehearing was denied July 15, 1985, and appellant's petition for review by the Supreme Court was denied October 17, 1985. Bird, C. J., and Kaus, J., were of the opinion that the petition should be granted.