[Crim. No. 11088.    In Bank.    Dec. 1, 1967.]

In re SIMON HAWLEY on Habeas Corpus.

Simon Hawley, in pro. per., and Perry Farmer, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Respondent.

PETERS, J.—In June of 1966 petitioner pleaded guilty to murder in the first degree and was sentenced to life imprisonment. He did not appeal. On May 1, 1967, he filed a petition for a writ of habeas corpus seeking reversal of the judgment on the ground of ineffective aid of counsel at the time of his plea.

Petitioner's allegations and exhibits submitted by him, including the transcript of the grand jury proceedings, may be summarized as follows:

He is a 29-year-old American Indian. He had been drinking almost continuously from March 7, 1966, until the date of the homicide on March 19, 1966. On that day he met a woman in Sacramento's West End. They spent the morning drinking wine and in the evening decided to have intercourse. Petitioner remembered seeing a mattress in an abandoned hotel. They entered the hotel and went into a small, dark room where decedent, Alejandro Lopez, also under the influence of liquor, was sleeping on the mattress. Petitioner woke Lopez and asked him to leave. He got up, said something in Spanish and tried to kick petitioner, who knocked Lopez down with his fist. Hawley then had intercourse with his lady friend. Afterwards, Lopez made a remark that petitioner did not understand. Petitioner grabbed a stick and hit Lopez with it until he stopped talking. He then dragged the still-alive Lopez into another room 50 feet away. He gathered papers and small sticks together around Lopez and lit them. Petitioner does not

remember any of the details, nor does he remember dragging Lopez or lighting the fire. Petitioner then went out of the building, his lady friend left him, and he met and started to drink with a male friend. Petitioner noticed there was no fire in the building he had vacated and took his friend inside. The friend saw the body, and called the police. The two men waited until the officers arrived. Petitioner then related these facts to the officers and signed a statement. An autopsy revealed that the fire caused Lopez's death. The only damage to the building was a charring of the floor by the body.

Petitioner was indicted for murder and arson. He was represented by the public defender, who requested Dr. S. Green to prepare a psychiatric study of petitioner. In his report, Dr. Green reviewed petitioner's background. It showed that petitioner's mother, father and girl friend had all been killed in separate automobile accidents while they were intoxicated. Petitioner had only completed the 10th grade in school. Since 1954 he spent about 10 months of every year in prison, each incident resulting in his incarceration occurring while he was intoxicated. Dr. Green found physical deterioration and dilapidation with consequential impairment of retention, memory and vocabulary. Petitioner expressed no guilt about his actions and little concern over his fate. Dr. Green found him to be presently sane and responsible, but concluded as to his condition at the time of the crimes:

"At the time of the alleged crime of arson, the effect of prolonged alcoholism would be so severe it would contaminate any intent he may have had. Furthermore, the amount of wilfulness and maliciousness would be severely restricted and he would be inable [*sic*] to comprehend such an action or govern himself.

"Regarding the charge of murder, this man was severely intoxicated and does have a type of mental disease that rendered him incapable to do his duty to govern his actions in accord with the duty imposed by law. He did not act with malice aforethought, and in my opinion he cannot be guilty of murder. The necessary ingredients to kill, which are the result of deliberation and must depend upon a pre-existing reflection, were not present due to his state of mind.

"It is my opinion that this man's action can only be understood in the light of severe personality problems and mental disease which existed at the time of the alleged crimes. The intoxication involved him to a degree that he did not know right from wrong. He had aggressive feelings to such a degree

that he was psychotic, mentally ill, a dangerous man; but he could not do anything about it."

Counsel also had available a report by Dr. W. Rapaport, prepared upon request of the district attorney. Dr. Rapaport reviewed petitioner's present condition and concluded: "While he states that he was drunk at the time, examination indicates he was not unconscious. Examination shows no evidence of mental illness either at the time of the homicide or at the time of the examination. Examination reveals that he was not acting under an irresistable [*sic*] impulse or that he was under the influence or direction of any unusual power."

Under these circumstances, the public defender entered into an agreement with the prosecution to the effect that if petitioner would plead guilty to first degree murder, the prosecution would recommend life imprisonment instead of the death penalty and would move to dismiss the arson charge. Petitioner alleges that counsel advised him to plead guilty, to take the compromise, and thereby to avoid the danger of risking the death penalty. Petitioner does not allege that his counsel was unaware or failed to discuss with him the possible defenses of insanity (see *People* v. *Wolff*, 61 Cal.2d 795, 799-803 [40 Cal.Rptr. 271, 394 P.2d 959]) or of diminished capacity (see *People* v. *Conley*, 64 Cal.2d 310, 322 [49 Cal.Rptr. 815, 411 P.2d 911]).

Petitioner contends that the public defender's recommendation under these circumstances that he plead guilty to first degree murder was a denial of effective representation. This depends on whether the record shows that counsel's advice to plead guilty improperly deprived petitioner of the defenses mentioned.

Reliance is placed on *People* v. *Ibarra*, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]. There the defendant was convicted of possession of heroin in violation of Health and Safety Code section 11500. The conviction was reversed on the ground that the defendant was denied effective assistance of counsel because the record showed that counsel did not know of the rule that defendant could challenge the legality of the search and seizure despite his denial that the heroin was taken from him and his failure to claim a proprietary interest in the premises which were entered. Counsel's actions foreclosed the determination of crucial factual issues determinative of defendant's defense. It was stated that "It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so

results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he was entitled.'' (*Id.* at p. 464.)

We agree that the right of a defendant to assistance of counsel applies not only during trial, as in *Ibarra,* but also when the defendant is advised to plead guilty, and that the competency of counsel is subject to review in both instances.

Counsel by advising his client to plead guilty cannot be permitted to evade his responsibility to adequately research the facts and the law.

Bargaining for pleas is, of course, an important factor in the administration of the criminal law.[1] But at the time of determining whether to accept such a bargain the accused is entitled to the advice and assistance of counsel, based upon an investigation of the facts and law of his case. The plea of guilty ''constitutes an admission of every element entering into the offense charged, and constitutes a conclusive admission of defendant's guilt.'' (*People* v. *Outcault,* 90 Cal.App. 2d 25, 29 [202 P.2d 602].) Counsel is particularly qualified to make such a recommendation because it is he, not his client, who possesses the skills to analyze the nature of the charges, to evaluate the evidence, and to make informed recommendations.[2]

Deprivation of the right to counsel at the pleading stage because of incompetency can well constitute a deprivation of due process. Although plea bargains may expedite proceedings in the criminal courts, such expedition cannot be a substitute for due process. Thus, if incompetency of counsel were here shown, it would be a ground for relief.

But no such showing is made. There is no showing that counsel was not aware of the facts or the law, or that he was unfamiliar with a crucial defense. In fact the record shows

[1] For the fiscal year 1965 to 1966, 69 percent of the criminal cases in the superior courts were disposed of before trial. (Judicial Council of California, 1967 Annual Report of the Administrative Office of the Cal. Courts, table XIX, p. 201.)

[2] ''Few, if any, intelligent and well educated laymen are schooled in the science of law, and if charged with a crime are capable of determining for themselves whether the indictment is good or bad. They are unfamiliar with the rules of evidence, lacking both the skill and knowledge to prepare their defense adequately, even though they may have a perfect one. They require the guiding hand of counsel at every step of the proceeding. Though they be not guilty they face the danger of conviction because they do not know how to establish their innocence. If this be true of a man of intelligence how much more true it is of those without adequate schooling and experience.'' (*People* v. *McGarvy,* 61 Cal.App.2d 557, 562 [142 P.2d 92].)

quite the contrary. Obviously, counsel knew the facts of the case. In view of the confession and the facts admitted therein, the only possible defense related to the mental condition of the client. That the attorney was well aware of this possible defense is indicated by the fact that he secured the psychiatric report of Dr. Green.

Under the gruesome facts existing here, and in view of the conflicting evidence on the mental condition of petitioner, we cannot say that counsel was incompetent because he advised petitioner to plead guilty. While, if counsel had had a substantially conclusive defense it would have been a deprivation of counsel to urge the guilty plea, that is not this case. Here the evidence as to the defense was highly conflicting. Under such circumstances the paramount consideration of the lawyer is to determine whether it is reasonably possible that he could convince a jury of his version of the facts. Where there is a significant possibility that the jury might impose the death penalty, counsel's wisest alternative may well be a plea bargain.

That is this case. Here, there is no showing that counsel did not research the facts or the law, or that he was ignorant of a crucial defense, or that he did not talk these matters over with petitioner.[3] While counsel possessed substantial evidence supporting the possible defenses of insanity or diminished responsibility,[4] including some substantiation from the district attorney as to defendant's intoxication,[5] he also knew that such evidence had been directly contradicted by Dr. Rapaport. He also knew that the facts were quite gruesome, and that defendant's admitted conduct indicated a degree of premeditation and malice. He knew that in a trial the death penalty was a real possibility. Under such circum-

---

[3]In order to secure habeas corpus relief, petitioner must allege and prove all the facts upon which he relies to overturn the judgment. (See e.g., *In re Shipp*, 62 Cal.2d 547, 553 [43 Cal.Rptr. 3, 399 P.2d 571]; *In re Dixon*, 41 Cal.2d 756, 760 [264 P.2d 513].) A general allegation of ''ineffective counsel'' is not a sufficient basis for relief.

[4]*People* v. *Conley, supra,* 64 Cal.2d 310, decided three months before petitioner changed his plea to guilty, first applied the diminished capacity defense to a situation where the defendant was intoxicated; however, the defense, generally, has been well recognized since *People* v. *Wells,* 33 Cal. 2d 330 [202 P.2d 53]. Compare also *People* v. *Gorshen,* 51 Cal.2d 716 [336 P.2d 492].

[5]The prosecutor in his statement of the facts said to the court: ''Essentially, this defendant had been drinking with companions in the West End. They had been drinking wine. Mr. Hawley stated to me that this conduct had been going on over the last two or three days. We had corroborated the fact that he had been drinking, just prior to this incident.''

stances he cannot be charged with incompetency in seeking and advising a plea bargain.

Petitioner's contention that his statements to the police were received in violation of *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], is without merit. There was full compliance with *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Miranda* is not applicable to cases prior in date. (*People* v. *Rollins*, 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

The order to show cause is discharged and the petition is denied.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.