[Crim. No. 14025. In Bank. Apr. 10, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD VAUGHN, Defendant and Appellant.

## COUNSEL

Coleman A. Blease, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger and Thomas C. Lynch, Attorneys General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Willard F. Jones, Edsel W. Haws and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—In 1968 defendant Edward Vaughn, then serving a life sentence, pled guilty to assault on a prison guard by force likely to produce great bodily injury (Pen. Code, § 4500) and a jury fixed the penalty at death. On appeal we reversed the judgment as to penalty under *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], but affirmed the judgment as to guilt. (*People* v. *Vaughn* (1969)

71 Cal.2d 406 [78 Cal.Rptr. 186, 455 P.2d 122].) Upon retrial of the penalty issue, a jury again fixed the penalty at death and defendant's automatic appeal is now before us (Pen. Code, § 1239, subd. (b)).

In *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], we held that capital punishment violated our state constitutional prohibition against cruel or unusual punishments. (Cal. Const., art. I, § 6.)[1] And in *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726], the United States Supreme Court ruled that the imposition of the death penalty in these circumstances contravened the federal Constitution's ban on cruel and unusual punishments. (U.S. Const., 8th Amend.) Under *Anderson* and *Furman,* defendant's death penalty must be set aside; it is therefore unnecessary to consider the claims of other error arising out of defendant's second penalty trial.

Defendant, however, additionally raises several contentions with respect to the initial judgment of guilt. Defendant claims that his original plea of guilty should be set aside because (1) the trial court erroneously permitted defendant to represent himself at the guilt stage, and (2) the court did not fully comply with Penal Code section 1018 in appointing counsel just prior to accepting defendant's guilty plea. As we discuss below, neither of these challenges to the judgment of guilt has merit.

Defendant's initial contention—contesting the trial judge's decision to permit defendant to represent himself at the guilt stage—was addressed and directly rejected by this court on defendant's first appeal.[2] We there stated: "In this case defendant insisted at the beginning of the proceedings that he did not wish to be represented by the public defender. At first

---

[1]For the effect of article I, section 27, of the California Constitution on this issue, see *People* v. *Murphy* (1972) 8 Cal.3d 349, 352, footnote 2 [105 Cal.Rptr. 138, 503 P.2d 594].

[2]Although our prior decision in this case constitutes a final judgment as to guilt which would normally preclude a present attack on defendant's guilty plea (cf. *People* v. *Love* (1961) 56 Cal.2d 720, 725 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809]), in contesting the trial court's decision to permit self-representation, defendant is essentially arguing that he was denied his federal constitutional right to effective assistance of counsel. Such a constitutional claim could constitute a basis for a collateral attack on the judgment if defendant had no opportunity to raise the issue at trial or on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759-761 [264 P.2d 513]), and we have permitted such challenges to the judgment of guilt on appeal from a subsequent penalty trial. (See *People* v. *Ketchel* (1966) 63 Cal.2d 859, 865-866 [48 Cal.Rptr. 614, 409 P.2d 694]; *People* v. *Polk* (1965) 63 Cal.2d 443, 447-448 [47 Cal.Rptr. 1, 406 P.2d 641].) Defendant's reliance on our recent decision in *People* v. *Sharp* (1972) 7 Cal.3d 448 [103 Cal.Rptr. 233, 499 P.2d 489], decided subsequent to our prior affirmance of his guilt, arguably brings this case within the *Ketchel* doctrine and thus we have considered his contention on the merits.

the trial court refused to permit defendant to represent himself. When defendant persisted in this request, however, the court inquired extensively into his competence to waive counsel and to defend himself. Defendant stated that he had experienced three other prosecutions for violations of section 4500, that he had studied law in his cell, that he was familiar with some rules of evidence and that he had begun preparation of the case. The public defender agreed to turn all of his legal notes over to the defendant. Under these circumstances the trial court did not abuse its discretion in granting defendant's request that he be allowed to represent himself." (*People* v. *Vaughn* (1969) 71 Cal.2d 406, 419 [78 Cal.Rptr. 186, 455 P.2d 122].)

■ Defendant acknowledges that under normal application of the "law of the case" doctrine he would be precluded from renewing his contention at this stage of the proceedings. (See *People* v. *Terry* (1964) 61 Cal.2d 137, 151 [37 Cal.Rptr. 605, 390 P.2d 381].) Defendant points out, however, that an exception to the law of the case doctrine has been recognized when, subsequent to the initial decision in a case, a new rule of law is articulated which bears on the issue in question; because, in such a case, the defendant will normally not have had the opportunity to argue the applicability of the new rule at trial or on appeal, this court has permitted the issue to be raised on a subsequent appeal. (See *Subsequent Injuries Fund* v. *Ind. Acc. Com.* (1960) 53 Cal.2d 392, 395 [1 Cal.Rptr. 833, 348 P.2d 193]; *People* v. *Terry* (1964) *supra,* 61 Cal.2d 137, 151, fn. 9.)

Defendant suggests that this exception is applicable here, contending that this court's recent decision in *People* v. *Sharp* (1972) 7 Cal.3d 448 [103 Cal.Rptr. 233, 499 P.2d 489]—holding that a defendant has no constitutional right to represent himself—constitutes just such a relevant, intervening decision. As the *Sharp* opinion itself makes clear, however, that decision does not "purport to hold . . . that an accused is not entitled to represent himself in a proper case, but only that such right is not a constitutionally protected one." (7 Cal.3d at p. 461.) Indeed, the *Sharp* court explicitly declared: "We have heretofore set forth standards by which a trial court may determine the competency of an accused who wishes to represent himself . . . [citation], and we do not now depart therefrom." (*Id.*)

In the instant case the record reveals that in permitting defendant to represent himself the trial court did not act upon an erroneous conclusion that it was constitutionally compelled to do so, but that, on the contrary, the trial judge permitted self-representation only after he was fully con-

vinced of the defendant's competence. In upholding the trial court's decision on the initial appeal, we found that the trial court had properly evaluated defendant's competence under the appropriate standards, standards which the *Sharp* decision explicitly reaffirms. Under these circumstances *Sharp* affords defendant no basis for attacking the trial court's decision to permit him to represent himself.

Defendant additionally contends that in accepting his guilty plea the trial court failed fully to comply with Penal Code section 1018, which provides inter alia that "[n]o plea of guilty of a felony for which the maximum punishment is death . . . shall be received from a defendant who does not appear with counsel . . . ."[3]

As noted above, during the major stages of the guilt phase the defendant personally controlled his own defense; throughout this period, the public defender, who had initially been appointed as defendant's counsel and who had handled the early stages of the defense, remained on the case in an advisory capacity. In the middle of his presentation of the defense, defendant informed the court that he wished to withdraw his plea of not guilty and enter a plea of guilty. The trial judge questioned defendant extensively at this point to assure that the decision to change his plea was completely voluntary and with full knowledge of the consequences of such action. The court also advised defendant to discuss the matter with his advisory counsel, and the judge called a short recess to permit such consultation.

When court reconvened, the trial judge informed defendant that under

[3]There is considerable question whether defendant may raise this issue for the first time at the present stage. Although the "law of the case" doctrine is not applicable since our earlier decision did not actually determine whether Penal Code section 1018 was complied with (see *Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 231 [28 Cal.Rptr. 865, 379 P.2d 321]), our prior affirmance of the judgment of guilt constitutes a final judgment as to guilt, at least with respect to questions of state law. (See *People* v. *Love* (1961) *supra,* 56 Cal.2d 720, 725; cf. *People* v. *Polk* (1965) *supra,* 63 Cal.2d 443, 448; *People* v. *Ketchel* (1966) *supra,* 63 Cal.2d 859.) On the other hand, although defendant primarily phrases his argument in terms of a breach of statutory standards, his contention may also be characterized as a claim that he was denied the effective assistance of counsel at a critical stage of the proceedings, a constitutional claim that could generally be raised by a collateral attack on the judgment if defendant had no adequate opportunity to raise the claim earlier, and, as such, one that he would normally entertain at this time. (*People* v. *Ketchel* (1963) *supra,* 63 Cal.2d 859, 865-866.) Aside from an obscure reference to *People* v. *Sharp* (1972) *supra,* 7 Cal.3d 448, defendant does not explain why he could not raise this section 1018 claim on his initial appeal. Because we find that on the merits defendant's contention is untenable, however, we need not determine in the instant case whether a failure to comply with section 1018's requirements rises to the level of constitutional error, or whether defendant's initial failure to raise this issue may be excused.

Penal Code section 1018 he could not accept defendant's plea of guilty so long as he was not represented by counsel. Defendant declared that he still desired to plead guilty and he agreed to have his advisory counsel reappointed as his counsel of record for this purpose. The court indicated it would make such appointment and recessed to permit defendant and counsel to confer again.

After the second consultation, defendant once again informed the court that he wished to enter a plea of guilty to the charge against him. His counsel indicated "for the record" that he had advised defendant not to change his plea, explaining that he felt that defendant had nothing to gain by entering a plea of guilty. Counsel also indicated, however, that he had fully advised defendant of the consequences of a guilty plea, that defendant understood the charge and was competent to make his own decision, and that defendant had decided to plead guilty. The court then once again questioned defendant to assure that his plea of guilty was completely voluntary, and, upon receiving the defendant's assurances,[4] the trial judge accepted the guilty plea.

Defendant now contends that the trial court's allegedly "pro forma" appointment of counsel immediately prior to his guilty plea did not comply with the requirements of Penal Code section 1018. Defendant argues that section 1018 contemplates "zealous" and "active" representation of counsel, and he suggests that the appointment in this case, coming very shortly before the plea and after defendant had already made up his mind to plead guilty, did not satisfy the statutory standards. We do not agree.

In requiring a defendant who wishes to plead guilty to a capital offense to be represented by counsel, section 1018 is obviously designed to protect defendants by assuring that such a serious step is a fully informed and competent one, taken only after consultation with and advice by counsel. (See *People* v. *Ballentine* (1952) 39 Cal.2d 193, 196 [246 P.2d 35].) As this court has indicated on several occasions, counsel's role in

---

[4]Defendant now suggests that he actually pled guilty because state correctional officers were harassing those prisoners who testified in his behalf and he contends that the trial judge failed to make adequate inquiries at the time of the plea to assure that the guilty plea was truly voluntary. The record refutes the latter contention. Although defendant did complain of such harassment during the guilt phase, the trial judge—on two separate occasions—specifically asked the defendant before accepting his plea whether the change in plea was motivated by a desire to protect any of his witnesses. While defendant's initial response to this inquiry was somewhat ambiguous, he ultimately stated very definitely that his guilty plea was not influenced by any such consideration. On this record, we believe the trial court properly concluded that defendant's plea was voluntary.

this setting is " 'to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.' [Citation]." (*In re Williams* (1969) 1 Cal.3d 168, 175 [81 Cal.Rptr. 784, 460 P.2d 984]; *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].)

■ In the instant case, counsel's performance fully complied with these standards. Although the public defender was formally appointed counsel of record only a few minutes prior to the plea, he was entirely familiar with the case having served as counsel of record during the initial stages of the proceeding and having remained at trial as advisory counsel throughout the period that defendant was permitted to represent himself. Defendant and counsel were given ample opportunity to discuss the advisability of entering the plea, and counsel reported that he had fully informed defendant of the consequences of a guilty plea and that he had recommended against the entry of such a plea because he felt defendant had nothing to gain by pleading guilty. Under these circumstances, counsel's representation was effective and the provisions of section 1018 were fully satisfied.

■ Defendant further argues, however, that because counsel indicated that he did not believe defendant should plead guilty, the trial judge erred in accepting the plea. As we stated in *In re Beaty* (1966) 64 Cal.2d 760, 765 [51 Cal.Rptr. 521, 414 P.2d 817], however, "[t]he decision to plead guilty or not guilty was for petitioner to make." (See Pen. Code, § 1018; *In re Williams* (1969) *supra,* 1 Cal.3d 168, 177, fn. 8.) Such a decision is a personal one, and so long as defendant was competent and his decision voluntary and informed, the trial judge could properly accept the plea. In the instant case, while counsel recommended against a guilty plea, he also indicated that defendant "certainly understands the charge and . . . is competent to understand what the proceedings are and to make a decision." Under these circumstances, the court did not err in accepting defendant's guilty plea.[5]

Thus, we have concluded that defendant's present attack on the judgment of guilt cannot be sustained. The judgment, insofar as it provides

[5]Defendant's plea of guilty was entered on May 14, 1968, more than a year before the United States Supreme Court decision in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and consequently the *Boykin* decision has no application to the instant case. (See *In re Tahl* (1969) 1 Cal.3d 122, 135 [81 Cal. Rptr. 577, 460 P.2d 449].)

for the penalty of death, is modified to provide a punishment of life imprisonment and as so modified is affirmed.

Wright, C. J., Mosk, J., Burke, J., Sullivan, J., and Devine, J.,* concurred.

**McCOMB, J.**—I concur in the majority opinion, except that, for the reasons expressed in my dissenting opinion in *People* v. *Anderson,* 6 Cal.3d 628, 657 [100 Cal.Rptr. 152, 493 P.2d 880], I dissent from the modification of the judgment. (See Cal. Const., art. I, § 27.)

---

*Assigned by the Chairman of the Judicial Council.