[Crim. No. 21003. Dec. 23, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE MASSIE, Defendant and Appellant.

**COUNSEL**

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Supreme Court, Jonathan B. Steiner, Chief Assistant State Public Defender, Russell I. Lynn and Donald L. A. Kerson, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Robert R. Granucci, Acting Assistant Attorney General, and Catherine A. Rivlin, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**KAUS, J.**\*—Defendant Robert Lee Massie appeals from a judgment imposing a sentence of death following his plea of guilty to charges of murder

---

\*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

with special circumstances, assault with a deadly weapon, four counts of possession of a concealable weapon by an ex-felon, and three counts of robbery.[1] As will appear, we conclude that the judgment of death must be reversed because the trial court failed to follow Penal Code section 1018,[2] as interpreted in *People* v. *Chadd* (1981) 28 Cal.3d 739 [170 Cal.Rptr. 798, 621 P.2d 837], in permitting defendant to enter a plea of guilty to the capital charges against the advice of defense counsel.

Just before defendant's trial was scheduled to begin, defendant informed the court that he wanted to change his plea from not guilty to guilty—apparently in reaction to what he viewed as the trial court's unwarranted acceptance of the truth of the testimony of several police officers regarding the circumstances surrounding defendant's confession. In explaining his decision to change his plea, defendant stated: "I happened to have been telling the truth when I told you that I asked for attorneys when I come in here. [¶] However, both officers have gotten on the stand and said the contrary. Okay. Fine. That's the way it is. [¶] At this point, I see no reason to pursue this, what is to me, a farce and a sham. I will just as soon go ahead, let the preliminary transcripts stand as they are, and as to the guilt—or if the prosecution desires, they can put on more witnesses. [¶] But I just like the guilty plea to stand. I'd like a penalty trial period. And let it go at that."

---

[1]The basic charges are as follows: Count I: Murder of Boris Naumoff on January 3, 1979. Count II: Robbery of Boris Naumoff on January 3, 1979. Count III: Assault with a deadly weapon on Charles Harris on January 3, 1979. Count IV: Possession of a concealable weapon by an ex-felon on January 3, 1979. Count V: Robbery of Yasphine Khashan on January 2, 1979. Count VI: Possession of a concealable weapon by an ex-felon on January 2, 1979. Count VII: Robbery of George Shatara on January 3, 1979. Count VIII: Possession of a concealable weapon by an ex-felon on January 3, 1979. Count IX: Possession of a concealable weapon by an ex-felon on January 4, 1979.

The following special circumstances were alleged: 1. Defendant was previously convicted of the offense of murder of the first or second degree. 2. The murder was committed while defendant was engaged in the commission or attempted commission of the robbery of Boris Naumoff.

[2]Section 1018 provides in full: "Unless otherwise provided by law every plea must be entered or withdrawn by the defendant himself in open court. No plea of guilty of a felony for which the maximum punishment is death, or life imprisonment without the possibility of parole, shall be received from a defendant who does not appear with counsel, nor shall any such plea be received without the consent of the defendant's counsel. No plea of guilty of a felony for which the maximum punishment is not death or life imprisonment without the possibility of parole shall be accepted from any defendant who does not appear with counsel unless the court shall first fully inform him of his right to counsel and unless the court shall find that the defendant understands his right to counsel and freely waives it and then, only if the defendant has expressly stated in open court, to the court, that he does not wish to be represented by counsel. On application of the defendant at any time before judgment the court may, and in case of a defendant who appeared without counsel at the time of the plea the court must, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. Upon indictment or information against a corporation a plea of guilty may be put in by counsel. This section shall be liberally construed to effect these objects and to promote justice."

Unless otherwise noted, all section references are to the Penal Code.

Defense counsel, however, made it clear that he did not agree with his client's decision to plead guilty. At the beginning of the change of plea proceeding, he stated: "And this proceeding that we are about to enter into which would be a waiver of constitutional rights and pleas of guilty to the substantive counts, I believe is being entered into by Mr. Massie above and beyond the advice of counsel. We are ready to proceed with the guilty phase of this trial." Shortly thereafter, just before advising defendant of his constitutional rights for the record, counsel again stated his opposition to the guilty plea: "This is being done against the advice of counsel." Finally, after enumerating the specific constitutional rights that defendant was waiving by his plea, counsel once again stated: "Your honor, this plea is offered as results of discussions with my client, and we have discussed the matter carefully. [¶] I believe the plea is—well, the plea is being offered against the advice of counsel at this time. However, it's my understanding that Mr. Massie is adamant and wishes to enter pleas of guilty at this time." [The Court]: "And for that reason, you do not withhold your consent, is that correct?" [Defense counsel]: "That is correct, your honor. And I don't see that we can go any further with this matter with the state of the case as it is and my client's wishes."

Defendant's pleas were entered a year and one-half before we filed our decision in *People* v. *Chadd, supra,* 28 Cal.3d 739, reviewing the restrictions set forth in section 1018 on the acceptance of guilty pleas in capital cases. In *Chadd* we discussed the statute's history and noted that before it was amended in 1973, section 1018 provided simply that no plea of guilty to a capital charge could be received from a defendant who was not represented by counsel. In *People* v. *Vaughn* (1973) 9 Cal.3d 321 [107 Cal.Rptr. 318, 508 P.2d 318], a defendant who had pleaded guilty to a capital offense against the advice of counsel contended on appeal that the plea was improperly received under section 1018. The *Vaughn* court rejected the claim, reasoning that while section 1018—as it then read—was "obviously designed to protect defendants by assuring that such a serious step [i.e., pleading guilty to a capital offense] is a fully informed and competent one, taken only after consultation with and advice by counsel," the statute did not require the defendant to follow that advice. (9 Cal.3d at pp. 327-328.)

As *Chadd* noted, however, shortly after the *Vaughn* decision "the Legislature closed the statutory gap revealed in *Vaughn* by adding to section 1018 the further requirement that a court cannot accept a guilty plea to a capital charge 'without the consent of the defendant's counsel.'" (28 Cal.3d at p. 749.) *Chadd* explained that the 1973 amendment to section 1018 "was an integral part of the Legislature's extensive revision of the death penalty laws in response to the decision of the United States Supreme Court in *Furman* v. *Georgia* (1972) 408 U.S. 238 . . . to eliminate the arbitrariness

that *Furman* found inherent in the operation of prior death penalty legislation. . . . [T]he Legislature intended [the requirement of counsel's consent to guilty pleas in capital cases] to serve as a further independent safeguard against erroneous imposition of a death sentence." (*Id.* at p. 750.)

*Chadd* went on to observe that "[t]he effect of the amendment on the *Vaughn* rule is plain: we may safely assume it uncommon that an attorney who has advised a capital defendant against pleading guilty will consent to allow him to act contrary to that advice *and to counsel's professional judgment* as to his client's best interests. It follows that since the 1973 amendment *a capital defendant is no longer permitted to plead guilty in this state against the advice of his attorney.*" (Italics added.) (*Id.* at pp. 749-750.)

In *Chadd* we rejected the Attorney General's assertion that section 1018 could be read "to permit a capital defendant to discharge his attorney and plead guilty if he knowingly, voluntarily and openly waives his right to counsel," pointing out that "that is precisely what the third sentence of section 1018 expressly authorizes *noncapital* defendants to do. The proposal would thus obliterate the Legislature's careful distinction between capital and noncapital cases, and render largely superfluous its special provision for the former. Such a construction would be manifestly improper." (28 Cal.3d at p. 747.)

We also rejected the Attorney General's alternative claim that if section 1018 could not be so construed, it represented an unconstitutional infringement on the constitutional right of self-representation recognized by the United States Supreme Court in *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]. We noted that "*Faretta* does not purport to guarantee a defendant acting in propria persona the right to do any and all things his attorney could have done." (28 Cal.3d at p. 750.) Nor does it purport to abrogate the rule that a state could constitutionally prohibit *all* guilty pleas to murder charges (*North Carolina* v. *Alford* (1970) 400 U.S. 25, 38-39 [27 L.Ed.2d 162, 171-172, 91 S.Ct. 160]) or the rule that a capital defendant has no right to waive his automatic appeal (*People* v. *Stanworth* (1969) 71 Cal.2d 820, 833 [80 Cal.Rptr. 49, 457 P.2d 889]). (*Id.* at pp. 751-752.) In short, we determined that *Faretta* did not affect the state's power to limit a capital defendant's right to plead guilty to situations in which his counsel advises such a move.

In the present case, it is quite clear that defendant's guilty plea was entered over his counsel's objection and advice to the contrary. Although defense counsel did not formally withhold consent, as was done in *Chadd,* the record compels the conclusion that that this is so only because at the time this plea was entered—long before our decision in *Chadd*—neither

counsel nor the trial court was aware of counsel's duty to exercise independent judgment with respect to the decision to plead guilty. Counsel's comments throughout the plea proceedings leave no doubt that he firmly believed that the guilty plea should not be entered and that it was being offered against his advice. Indeed, the trial court's comments reveal quite plainly that it understood that counsel was going along simply because his client was "adamant" in his decision to plead guilty. No tactical considerations are apparent other than counsel's possible fear that if he did not accede, defendant would simply dismiss him, and plead guilty in propria persona.

While at the time there was uncertainty about the effect of *Faretta* on section 1018, we now know that counsel's fear was unwarranted. The matter was eventually resolved in *Chadd* when we held that it was within the Legislature's power to determine, as it has, that a defendant who wants to plead guilty in a capital case must be represented by counsel who exercises his independent judgment in deciding whether to consent to the plea. (*People* v. *Chadd, supra,* 28 Cal.3d at pp. 747-750.)

The inescapable conclusion from this record is that (1) defense counsel formally "consented" to the guilty plea only because he was unaware of his responsibility to act on the basis of his independent professional judgment on the matter, and (2) the trial court accepted the guilty plea only because it too did not understand the purpose of section 1018's requirement of a separate consent by defense counsel. The confusion of counsel and the court is understandable since, as noted, the plea proceedings in this case were conducted before we had directly ruled on the point in *Chadd*. Nonetheless, in light of *Chadd*'s holding, and its explanation of the important role that the independent consent requirement plays in eliminating arbitrariness in the death penalty process, defendant's guilty plea to a capital offense against the advice of counsel cannot be permitted to stand.

The judgment must be reversed insofar as it convicts defendant of first degree murder on count I and finds true the special circumstances alleged in support of that count. Under *Chadd,* it also must be reversed as to the robbery in count II. (See fn. 1, *ante.*) As in *Chadd,* if the robbery conviction in count II were allowed to stand, "it would be conclusive on retrial of the murder count and the prosecution would need only prove the fact of the killing in its perpetration in order to obtain a new conviction of first degree murder." (28 Cal.3d at p. 755.) The other convictions shall stand.

Our reversal of the capital charges makes it unnecessary to discuss any of defendant's other contentions, since they all went to the capital nature of the case.

On counts I and II the judgment is reversed with directions to the trial court to strike from its records defendant's pleas of guilty and his admissions of charged enhancements and special circumstances allegations. In all other respects the judgment is affirmed.

Bird, C. J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**LUCAS, J.,** Concurring and Dissenting.—I concur in the judgment to the extent it affirms defendant's conviction of two counts of robbery, four counts of possession of a concealable weapon by an ex-felon, and one count of assault with a deadly weapon.

I dissent, however, to the reversal of defendant's first degree murder conviction and a related robbery count, and to the setting aside of the special circumstances finding and penalty judgment. In my view, defendant's plea of guilty to the murder and robbery counts was valid, being made with the requisite consent of his counsel. (Pen. Code, § 1018.)

Defendant committed his robbery-murder of Boris Naumoff on January 3, 1979. By reason of today's decision, upsetting defendant's guilty plea, the People must attempt to reconstruct and bring to trial a capital case nearly seven years old. Predictably, that task may prove quite difficult by reason of the passage of time. Because of the defendant's guilty plea, no trial record exists to aid in the task of reconstruction. In light of defendant's proven proclivity for committing armed robbery and shooting to death his resisting victims (see *People* v. *Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869] [death penalty upheld for a 1965 robbery-murder]), it would be most unfortunate if the People were unable to bring defendant to justice for his present offenses. In light of defendant's valid guilty plea thereto, a belated trial of those offenses should be entirely unnecessary.

Penal Code section 1018 provides that a guilty plea in a capital case shall not be received "without the consent of the defendant's counsel." In *People* v. *Chadd* (1981) 28 Cal.3d 739, 747-754 [170 Cal.Rptr. 798, 621 P.2d 837], we upheld the constitutionality of section 1018, rejecting a claim that the section improperly interfered with the accused's constitutional right of self-representation. (See *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) In doing so, we emphasized the state's strong interest in assuring the accuracy and fairness of all criminal proceedings, and particularly capital cases.

We observed in *Chadd* that, by reason of section 1018 and its requirement that counsel consent to entry of a guilty plea in a capital case, "we may safely assume it *uncommon* that an attorney who has advised a capital de-

fendant against pleading guilty will consent to allow his client to act contrary to that advice and to counsel's professional judgment as to his client's best interests. It follows that since the 1973 amendment [to section 1018] a capital defendant is no longer permitted to plead guilty in this state against the advice of his attorney." (28 Cal.3d at pp. 749-750, fn. omitted, italics added.)

The present case represents the "uncommon" exception to the general rule mentioned in *Chadd*. Here, although trial counsel had advised his client against pleading guilty and had carefully explained the disadvantages of such a plea, he ultimately, though reluctantly, consented to the plea. The majority holds that counsel's begrudging consent was ineffective, but I find no proper basis for so holding. Although counsel informed the court that he had advised his client not to plead guilty, the fact remains that *counsel did consent*. Counsel appears to have consented to the plea based upon the prosecution's overwhelming case against defendant, including his own confession. Counsel might have believed that the best tactic would be to forego a pointless guilt phase trial in the hope that defendant's attitude of cooperation and remorse would result in an exercise of mercy at the penalty phase.

The record indicates that defendant's change of plea occurred immediately after the trial court upheld the admissibility of defendant's confession, which had been challenged as involuntary. Trial counsel confirmed that the guilty plea "is offered as results [*sic*] of discussions with my client, and we have discussed the matter carefully." After indicating to the court that he had advised defendant not to plead guilty, but that his client remained "adamant," the court inquired whether "for that reason, you do not withhold your consent; is that correct?" Counsel replied, "That is correct, your Honor. And I don't see that we can go any further with this matter *with the state of the case as it is* and my client's wishes." (Italics added.) Thus, contrary to the majority's assertion, the record discloses that trial counsel did not simply accede to his client's demands without an independent appraisal of the consequences of a guilty plea. As the record indicates, counsel's consent to the guilty plea was based at least in part upon counsel's realization that the People had marshalled a very strong case against his client.

The majority suggests that neither the trial court nor defense counsel "was aware of counsel's duty to exercise independent judgment" regarding the guilty plea. (*Ante*, pp. 624-625.) This suggestion improperly slurs the competence and intelligence of both court and counsel: Section 1018 expressly provides in pertinent part that "No plea of guilty [in a capital case] . . . shall be received from a defendant who does not appear with counsel, *nor*

*shall any such plea be received without the consent of the defendant's counsel.*" (Italics added.) How can the majority so readily assume that neither court nor counsel understood their plain statutory obligations?

Thus, the present record fails to show on its face that trial counsel's consent was obtained through mistake, inadvertence or any other reason than proper tactical considerations. Under such circumstances, we should uphold the plea. If there were indeed some doubt about counsel's competence in consenting to the plea, habeas corpus rather than appeal would represent the proper remedy for exploring the issue. (See *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) No habeas petition was filed in this case.

I conclude that trial counsel's consent to defendant's guilty plea was valid and effective. Accordingly, I would affirm the judgment in its entirety.

Mosk, J., concurred.