Antonio MOLINAR, Petitioner,

v.

A.C. NEWLAND, Warden, California
State Prison, at Vacaville,
California, Respondent.

No. C 99–3818 SI.

United States District Court,
N.D. California.

March 22, 2001.

Frank G. Prantil, Sacramento, CA, for Antonio Molinar.

Sharon G. Birenbaum, State Attorney General's Office, San Francisco, Ca, for A.C. Newland.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ILLSTON, District Judge.

On August 11, 1999, Antonio Molinar ("Molinar"), a prisoner at California Department of Corrections, at Vacaville, California, filed a timely Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254. On February 29, 2000, this Court ordered respondents to show cause why the writ should not be issued. On May 9, 2000, respondent filed an Answer to Petition for Writ of Habeas Corpus. Petitioner did not file a traverse.

## BACKGROUND

On May 23, 1996 in the Superior Court of Contra Costa County, Molinar was convicted of numerous counts of sexual abuse of four female minors.[1] He was sentenced to 23 years in prison. CT 350–351, 353–354.[2] He appealed to the California Court of Appeal, which affirmed the conviction on March 26, 1997. The California Supreme Court denied review on June 11, 1997.

Beginning on June 29, 1998, petitioner filed petitions for a writ of habeas corpus in the Contra Costa County Superior Court, alleging that he was denied his due process right to plead guilty to the charges in exchange for a sentence of 10 years, 6 months initially offered by the Contra Costa County Superior Court Judge.[3] Petition ("Pet."), ¶. 5–6. The petition was denied in a written decision by the Superior Court on October 7, 1998. *Id.* Subsequent petitions on the same grounds were pursued in the California Court of Appeal

---

1. Molinar pled guilty to Counts 7 through 14; was found guilty by a jury on Counts 1–6, 15–18 and 21; not guilty on Count 20; and Count 19 was dismissed. The charges were as follows:

   Count 1: Penal Code § 288.5 (Continuous sexual abuse of a child);

   Counts 2—5: Penal Code § 288(c) (Lewd and lascivious act upon a child);

   Count 6: Penal Code § 311.4(c) (Using a child under 18 years old in pornography);

   Counts 7—12: Penal Code § 261.5(a) (Unlawful sexual intercourse);

   Count 13: Penal Code § 311.4(c) (Using a child under 17 years in pornography);

   Count 14: Penal Code § 311.4(c) (Using a child under 17 years old in pornography);

   Counts 15—19: Penal Code § 288(c) (Lewd and lascivious act upon a child);

   Count 20: Penal Code § 288a(c) (Oral copulation);

   Count 21: Penal Code § 288a(b)(2) (Oral copulation with a victim under 16 years of age).

   *See* CT 293–295; 339–350.

2. "CT" refers to the Clerk's Transcripts of petitioner's state court trial. "RT" refers to the Reporter's Transcripts of petitioner's state court trial. *See* Answer to Petition for Writ of Habeas Corpus ("Answer"), Exhibits A and B.

3. Molinar argues in his brief that Judge Grant first made an offer of 10 years and 6 months. Review of the transcript discloses that Molinar's trial counsel felt that when the numbers were added up, they did not add up to 10 years and 6 months, and that the closest sentence was 10 years and 8 months. *See* RT, 726:28–727:4.

and California Supreme Court, and finally denied on June 30, 1999. *Id.*

Molinar filed the instant petition on August 11, 1999. The petition alleges that Molinar was denied his due process right to plead guilty to the charges against him. Pet., ¶. 1–2. Molinar alleges that Superior Court Judge Grant offered Molinar a maximum sentence of 10 years and 6 months, if petitioner would plead guilty. RT 726:28–727:4; CT 313:4–6. Molinar argues that he attempted to accept the offer at the readiness conference, and told Judge Grant that he was "entering a plea of guilty to everything." RT 727:12–13. However, Judge Grant told Molinar to wait, and that he wanted to discuss this further in his chambers with Molinar's trial counsel and the deputy district attorney. RT 727:13–16; CT 313:6–8. One of the issues discussed was whether the prosecution could use an uncharged event that occurred prior to the plea to later charge Mr. Molinar under the "Three Strikes" law. RT 727:17–20; CT 313:8–11.

Molinar's trial counsel believed that there was the potential that a police report statement by a woman who claimed that she was touched on the breast by Molinar could be charged as a felony sexual battery. *See* RT 727:21–28. The parties consulted others familiar with the "Three Strikes" law and found that the issue of whether a prior event could be filed as a "Three Strikes" offense had not been decided and that no case was pending on the issue at the time. *See* CT 313:20–24; RT 727:17–20, 728:7–10. Molinar's trial counsel was concerned that by entering the plea without a stipulation from the deputy district attorney not to charge Molinar for his preplea conduct, Molinar "would, in essence, be pleading himself to life in prison." *See* RT 727:24–27. Molinar then

"agreed to enter a plea of everything if the D.A. would just say they would not file the preplea stuff and call it a third strike." RT 727:28–728:2; *see also* CT 313:24–26. The deputy district attorney refused to enter into such an agreement. RT 728:2–4; CT 313:26. Molinar argues that at this point, the Judge refused to allow Molinar to plead guilty to the charges. Pet., p. 5. Molinar's trial counsel explained that when the "Three Strikes" issue was not resolved and the deputy district attorney continued to refuse to agree not to charge a prior offense under "Three Strikes," the Judge then commented to Molinar's trial counsel, "[t]hen you can't plead. There's just no way." RT 730:10–16; *see also* CT 313:26–27.

After the preliminary hearing, Judge Grant offered Molinar 12 years if Molinar would plead guilty to the charges. RT 728:20–23; CT 314:1–2. The deputy district attorney still would not enter into an agreement that "Three Strikes" would only apply to new offenses. CT 314:2–4. Subsequently, Molinar pled guilty on Counts 7 through 14, and chose to go to trial on the other counts. CT 350. The only issue in dispute at trial concerned the ages of two of the victims. RT 728:18–19, 729:11–15.

In the petition now before the Court, Molinar claims that Superior Court Judge Grant and the deputy district attorney interfered with his due process right to plead guilty.[4] Molinar also claims that he accepted Judge Grant's offer of 10 years and 6 months in exchange for his plea of guilty but that the judge would not honor the agreement.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (1996)

---

4. While Molinar claims that the deputy district attorney interfered with his right to plead guilty, he does not explain how the deputy district attorney did so. Therefore, the Court will not address this allegation. *See* Pet., p. 2.

("AEDPA") applies to this petition for habeas corpus, since it was filed after April 24, 1996. *See Lindh v. Murphy,* 521 U.S. 320, 326–327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). In relevant part, 28 U.S.C. §§ 2241–2254, as amended by AEDPA, states that this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

■ Under 28 U.S.C. section 2254(d)(1), a federal court may grant a writ of habeas corpus under the "contrary to" test, with respect to claims adjudicated on the merits in state court, if the state court either (1) fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case but nonetheless arrives at a conclusion opposite to that reached by the Supreme Court on a question of law. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519–1520, 146 L.Ed.2d 389 (2000); *Tran v. Lindsey,* 212 F.3d 1143, 1150 (9th Cir.2000).

■ Under the "unreasonable application" test, a federal habeas court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court if the state court identifies the cor-

rect governing legal principle from the Supreme Court's decisions but applies it to a new set of facts in a way that is objectively unreasonable. *See Williams,* 120 S.Ct. at 1520–1521; *Tran,* 212 F.3d at 1150. Both prongs of section 2254(d)(1) apply to both questions of law and mixed questions of law and fact. *See Tran,* 212 F.3d at 1150. In addition, while the "contrary to" and "unreasonable application" clauses have independent meaning, *see Williams,* 120 S.Ct. at 1519–20, they often overlap which may necessitate examining petitioner's allegations against both standards. *See Tran,* 212 F.3d at 1143, 1149–50.

■ "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *See Williams,* 120 S.Ct. at 1522.

■ The Ninth Circuit has further defined what constitutes an "unreasonable application" of federal law by applying the "clear error" doctrine. *See Tran,* 212 F.3d at 1152–53. Under this test, the federal court must reverse a state court decision as an unreasonable application of clearly established federal law when, after independent review of the legal question, the court is left with a "definite and firm conviction" that an error was committed—in other words, "that clear error occurred." *Id.* at 1152–54.

## DISCUSSION

■ The Superior Court stated in its decision denying Molinar's writ of habeas corpus that:

Contrary to counsel's current claim, Judge Grant did not interfere with the petitioner's right to plead guilty to the charges. As the court reads the tran-

script, Judge Grant made a pre-preliminary examination offer of 10 years 6 months. Petitioner was prepared to accept that offer at the readiness conference but mathematically the minimum would have to be 10 years 8 months. Before any further action could be taken, Judge Grant asked to see counsel in chambers where "he had a number of issues to discuss." Thereafter, Petitioner did not unequivocally attempt to accept that offer.

Counsel had a copy of a police report which indicated that there was an additional uncharged incident concerning the petitioner. (Reporter's Transcript p. 727:17-27.) If the D.A. were to file that case, petitioner would then be facing 25 years to life as a three strike defendant. The D.A. indicated that she could make [no] promises regarding that uncharged offense.

Counsel was not inclined to allow his client to proceed where "he would, in essence, be pleading himself to life in prison." (Id., p. 727:26-27.) "So, we went ahead and went to the preliminary hearing." (Id., p. 728:13-14.) After the preliminary hearing, petitioner proceeded to trial, was convicted and sentenced to 23 years in the state prison. Petitioner now wants to revive the 10 year 8 month offer.

On this record, this court does not and cannot find that petitioner's right to plead guilty was interfered with by Judge Grant or by any one else. If anything, the attempt to accept the offer was withdrawn in the face of the potential exposure to 25 years to life if the uncharged offense was subsequently filed.

See Answer, Exhibit J. This Court finds that the Superior Court's decision was not an "unreasonable application" of or "contrary to" clearly established federal law.

Molinar contends that he has a constitutional right to plead guilty and that the superior court judge violated this right. The Supreme Court in *North Carolina v. Alford*, 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162 (1970) stated that a trial judge need not "accept every constitutionally valid guilty plea merely because a defendant wishes so to plead" and that "[a] criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, ... although the States may by statute or otherwise confer such a right." The Supreme Court in *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) confirmed that "[t]here is ... no absolute right to have a guilty plea accepted" and that "[a] court may reject a plea in exercise of sound judicial discretion."

This Court recognizes that, as respondent has pointed out, Molinar has a statutory right to plead guilty under California Penal Code section 859a(a). Section 859a(a) provides in relevant part:

(a) If the public offense charged is a felony not punishable with death, the magistrate shall immediately upon the appearance of counsel for the defendant read the complaint to the defendant and ask him or her whether he or she pleads guilty or not guilty to the offense charged therein.... While the charge remains pending before the magistrate and when defendant's counsel is present, the defendant may plead guilty to the offense charged.... Upon accepting the plea of guilty ... the magistrate shall certify the case ... to the court in which judgment is to be pronounced ... and thereupon the proceeding shall be had as if the defendant had pleaded guilty in that court.

Cal.Penal Code § 859a(a).

Molinar, in asserting that he "has a constitutional right to plead guilty, even

against the advice of counsel," relies on *People v. Vaughn,* 9 Cal.3d 321, 107 Cal. Rptr. 318, 508 P.2d 318 (1973) (superceded by Penal Code § 1018). *See* Pet., p. 7–8. There are several reasons why *Vaughn* does not apply to Molinar's case. First, the court in *Vaughn* dealt with the question of whether the defendant could plead guilty to a capital charge against the advice of counsel under Penal Code § 1018,[5] and whether accepting such a plea violated defendant's right to self-representation or defendant's right to effective assistance of counsel. *See id.* at 328, 107 Cal.Rptr. 318, 508 P.2d 318. Notwithstanding § 1018, *Vaughn* held that defendant could plead guilty against the advice of counsel, as "long as defendant was competent and his decision voluntary and informed." *Id.* However, "the Legislature closed the statutory gap revealed in *Vaughn* by adding to section 1018 the further requirement that a court cannot accept a guilty plea to a capital charge 'without the consent of the defendant's counsel.'" *People v. Chadd,* 28 Cal.3d 739, 749–50, 170 Cal.Rptr. 798, 621 P.2d 837 (1981); *see also* Penal Code § 1018. The facts and issues decided in *Vaughn* do not apply to Molinar's due process claim.

Molinar also relies on *People v. Hill,* where the court stated that "only the most compelling reasons can justify any interference, however slight, with an accused's prerogative to personally decide whether to stand trial or to waive his rights by pleading guilty." *People v. Hill,* 12 Cal.3d 731, 768, 117 Cal.Rptr. 393, 528 P.2d 1 (1974), *overruled on other grounds,* by *People v. DeVaughn* 18 Cal.3d 889, 896, 135 Cal.Rptr. 786, 558 P.2d 872 (1977). In *Hill,* the Court emphasized the magnitude of the consequences of a defendant's guilty

plea stating that "[i]n entering into such a plea, a criminal defendant waives several of his most fundamental constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury and the right to confront one's accusers." *See Hill,* 12 Cal.3d at 768, 117 Cal.Rptr. 393, 528 P.2d 1. The court in *Hill* held the harmless error doctrine inapplicable to an appeal taken from a guilty plea entered following an erroneous denial of a motion to suppress evidence. The Court reasoned that where the trial court erroneously refused to suppress evidence, "the situation is altered, no matter how slightly, from that which existed prior to the plea of guilty." *Id.* Thus, the type of impermissible "interference" contemplated by *Hill* is the interference with evidentiary and "strategic considerations which lead an accused to plead guilty pursuant to a plea bargain." *Id.*

In contrast, Molinar does not claim that the superior court judge erred in advising him of the potential consequences of his guilty plea. Nor does Molinar claim that the superior court judge erred by not allowing him to personally decide whether or not to waive his rights by entering a plea of guilty. *Hill,* therefore, does not support Molinar.

Molinar also asserts that principles of contract law apply to plea negotiations or agreements and should apply to the facts of his case. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Molinar argues that the superior court judge's extension of a 10 year and 6 month sentence was an offer, that Molinar accepted the offer, and that there then existed a binding contract that was enforceable under the principles of due process.

---

**5.** Prior to its amendment in 1973, Penal Code section 1018 provided that "[n]o plea of guilty of a felony for which the maximum punishment is death ... shall be received from a

defendant who does not appear with counsel...." *See Vaughn,* 9 Cal.3d at 326, 107 Cal.Rptr. 318, 508 P.2d 318.

As the Superior Court noted, however, the record does not demonstrate that Molinar actually accepted the superior court judge's offer or that Molinar actually pleaded guilty to all charges in exchange for the 10 year and 6 months offer. *See* RT 727:11–16; *see also* CT 313:313:6–8. Instead, the record shows that after Judge Grant informed Molinar that a guilty plea could be used to enhance his sentence under the "Three Strikes" law, Molinar attempted to enter into a plea bargain with the deputy district attorney, "agree[ing] to enter a plea of everything *if* the D.A. would just say they would not file the preplea stuff and call it a third strike." RT 727:28–728:2 (emphasis added); *see also* CT 313:24–26. Thus, Molinar did not actually plead guilty and accept the indicated sentence but attempted to enter into a plea agreement with the deputy district attorney in exchange for his plea of guilty to the charges. *See* RT 727:28–728:1–4. Even if Molinar did attempt or intend to plead guilty at that time, the record shows that the attempt to accept the guilty plea was withdrawn in light of the possibility that, after the plea, Molinar could be faced with potential exposure to 25 years to life in prison, and that Molinar then attempted to plea bargain with the deputy district attorney. *See* RT 727:28–728:4. In light of the deputy district attorney's refusal to plea bargain, Molinar did not plead guilty and went to the preliminary hearing. *See* RT 728:11–14.

Moreover, as respondent points out, Molinar did not argue at the preliminary hearing, when he was offered 12 years, that he had already accepted the 10 year and 6 month indicated sentence. In addition, Molinar specifically "pled open" to counts 7 through 14 and acknowledged that there were no commitments made to him as to what his sentence would be with regard to these counts. *See* RT 3:7–12, 4:28–5:4. Molinar did not, at the point when he pled guilty, protest or assert that

he should not be sentenced to more than 10 years and 6 months. *See* RT 7:8–11. Finally, Molinar did not, at the sentencing hearing, argue that he had accepted the 10 year and 6 month indicated sentence. *See* RT 729:19–25. Rather, Molinar's trial counsel argued only that Molinar should not be punished for going to trial and being subjected to a significantly higher sentence than the one offered at the pre preliminary stage. *Id.* In sum, there is no evidence that Molinar's right to plead was interfered with. Nor is there evidence that Molinar accepted the offer by Judge Grant or, subsequent to the readiness hearing, unequivocally attempted to accept that offer.

Therefore, this Court finds that the Superior Court decision that Molinar's right to plead guilty was not interfered with was reasonable and not contrary to clearly established federal law.

### CONCLUSION

For the foregoing reasons, Antonio Molinar's petition for writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**